PEOPLE v BOWMAN

Docket No. 73187. Submitted November 8, 1984, at Lansing.—Decided March 18, 1985.

In March, 1980, Lester B. Bowman was charged with felonious assault and felony-firearm and, following a preliminary examination, was bound over to Tuscola Circuit Court on those charges. On March 2, 1981, a hearing was held before Patrick R. Joslyn, J., to determine defendant's competency to stand trial on those charges and on an unrelated larceny charge. On the basis of the report of the Center of Forensic Psychiatry, the trial judge determined that defendant was not competent to stand trial and an order to that effect was entered by the court. At that hearing, defense counsel indicated that in December, 1980, defendant had been adjudged by a federal district court to be incompetent to stand trial on a federal criminal charge and argued that the statutory 15-month period after which criminal charges against one who is incompetent must be dismissed should begin to run from the date of the federal court adjudication of incompetency. The trial court reserved its ruling on that question. On July 22, 1981, an order placing defendant in the care and custody of the Department of Mental Health was signed and filed. In January, 1982, a second competency hearing was held and conflicting evidence as to defendant's competency was presented. The trial court found that defendant was still incompetent to stand trial. In July, 1982, defense counsel moved to dismiss the charges against defendant on the basis that 17 months had passed since the March, 1981, determination of incompetency. The trial court held that the 15-month period ran from the date of the order committing defendant to the Department of Mental Health for treatment, July 22, 1981, and thus the 15-month period would not expire until the middle of October, 1982. On September 1, 1982, following

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 21 Am Jur 2d, Criminal Law § 113.

Presumption of continuing insanity as applied to accused in criminal case. 27 ALR2d 121.

[2, 4] 21 Am Jur 2d, Criminal Law § 107 *et seq.*

21A Am Jur 2d, Criminal Law § 640.

[3] 73 Am Jur 2d, Statutes § 194.

another hearing, defendant was found competent to stand trial. Defendant was thereafter convicted as charged following a jury trial. Defendant appeals. *Held:*

1. The 15-month statutory period after which the charges against a person found to be incompetent to stand trial must be dismissed runs from the date the person is adjudicated to be incompetent rather than the date the person is ordered committed for treatment. Since defendant was found incompetent to stand trial by the Tuscola Circuit Court on March 2, 1981, the 15-month period had run by the time the July, 1982, motion to dismiss was made. Since the Mental Health Code mandates dismissal of the charges under those circumstances, the trial court erred in denying the motion to dismiss.

2. Since dismissal is mandated by reason of the running of the statutory period even if the date of the Tuscola Circuit Court's own determination of incompetency is used, it is unnecessary to decide whether the statutory period, under these circumstances, should have begun to run on the date of the prior federal court determination of incompetency.

Reversed.

1. CRIMINAL LAW — COMPETENCY TO STAND TRIAL — MENTAL HEALTH CODE.

The 15-month period in the Mental Health Code after which criminal charges against an accused who has been determined to be incompetent to stand trial must be dismissed begins to run on the date the accused is adjudicated to be incompetent, rather than the date that the accused is first ordered committed for diagnostic examination or the date that the court enters the order committing the accused to the Department of Mental Health for treatment (MCL 330.2044; MSA 14.800[1044]).

2. CRIMINAL LAW — COMPETENCY TO STAND TRIAL — DUE PROCESS.

The procedures for determining a criminal defendant's competence to stand trial, as a general rule, are ultimately rooted in principles of due process.

3. STATUTES — JUDICIAL CONSTRUCTION.

General rules of statutory interpretation require courts to give effect to the terms of a statute where those terms are unambiguous.

4. MENTAL HEALTH — COMPETENCY TO STAND TRIAL — MENTAL HEALTH CODE.

The provision in the Mental Health Code limiting the total period that an accused determined to be incompetent to stand trial may be ordered committed to the Department of Mental Health

for treatment to not more than 15 months is intended to
protect a different right than the provision requiring dismissal
of the criminal charges 15 months after the date on which the
accused was originally determined to be incompetent to stand
trial; the treatment provision is intended to protect the accused
from an indefinite suspension of his right to liberty by his
detention for treatment, while the dismissal of criminal charges
provision is intended to protect the accused from an indefinite
suspension of his right to a speedy trial by the determination
or redetermination that he is incompetent to stand trial; the
Legislature did not intend that these two periods should run
consecutively (MCL 330.2034, 330.2044; MSA 14.800[1034],
14.800[1044]).

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *G. Scott Stermer,* Prose-
cuting Attorney, and *Michael A. Nickerson,* Assis-
tant Attorney General, for plaintiff.

*John C. Burns,* for defendant.

Before: M. J. KELLY, P.J., and BEASLEY and M. R.
STEMPIEN,* JJ.

M. J. KELLY, P.J. Defendant was jury tried and
convicted of felonious assault, MCL 750.82; MSA
28.277, and possession of a firearm during the
commission of a felony, MCL 750.227b; MSA
28.424(2). He was sentenced on June 6, 1983, and
appeals as of right, alleging that he was improp-
erly found competent to stand trial.

Defendant was arrested in March of 1980 for
assaulting with a revolver Kenneth Warren Beall,
an attorney for the bank which held the mortgage
on defendant's trailer. The offense occurred in
Tuscola County on March 18, 1980. On March 2,
1981, a hearing was held to determine defendant's
competence to stand trial on the assault and fel-
ony-firearm charges and on an unrelated larceny

---

* Circuit judge, sitting on the Court of Appeals by assignment.

charge. A report by Dr. Poythress, a psychiatrist from the Center for Forensic Psychiatry, was entered at the hearing by stipulation of the parties. It was Dr. Poythress's opinion that defendant was incompetent to stand trial because there was "some doubt" that defendant would be able to assist his counsel in a reasonable and rational manner. The court accepted the opinion and found defendant incapable of standing trial. The court determined, however, that treatment and therapy could remedy the incapacity.

At that first competency hearing, defense counsel argued that the 15-month period after which the charges in Tuscola County must be dismissed pursuant to § 1044 of the Mental Health Code, MCL 330.2044; MSA 14.800(1044), should run from the December, 1980, date on which defendant was "originally" adjudicated incompetent in a federal court criminal proceeding. According to defense counsel, defendant had been found incompetent to stand trial in an unrelated federal district court criminal proceeding conducted subsequent to defendant's arraignment on the Tuscola County charges. Counsel asserted that the federal court finding of incompetence in December of 1980 should be used for calculating the duration of defendant's incompetence to stand trial in the Tuscola County proceedings. Counsel then reasoned that the state court charges against defendant would have to be dismissed if the defendant remained incompetent past the middle of March, 1982. The trial court reserved its ruling on this issue and requested the parties to submit briefs on whether the period of incompetence established in the federal court could be tacked onto the period of incompetence established in the state court. An order placing defendant in the care and custody of

the Department of Mental Health was signed and filed on July 22, 1981.

A second competency hearing was held before the Tuscola County Circuit Court on January 21 and 25, 1982. The sole prosecution witness was defendant's treating clinician, psychiatric social worker Barbara O'Neal. Defendant did not object to Ms. O'Neal's testimony and the court found her qualified to testify as an expert as to defendant's competence. Ms. O'Neal testified that she first began treating defendant on November 12, 1981, and continued to see him twice a week until the date of hearing. According to Ms. O'Neal, defendant was a "model patient" and got along well with the staff and other patients. Ms. O'Neal revealed that there were some problems in communicating with the defendant. Specifically, she noted that defendant was often loud and overbearing, spoke in a rapid forced manner, and discussed, at length, his interpretation of the law and the unfairness of the actions instituted against him. Ms. O'Neal also testified that defendant was suffering from cardiovascular problems and from "Korsakoff's Disease", which was related to defendant's long history of alcohol abuse and which caused defendant to experience some memory deterioration. In order to compensate, defendant had a tendency to "confabulate", or unconsciously fill in the gaps in his memory with untrue information. Despite the communication problems, Ms. O'Neal opined that defendant understood and was aware of the significance of the charges against him and also understood the roles of the attorneys, judge and jury. She admitted that it would be tedious for an attorney to work with defendant, but explained that defendant could aid in his defense if he were first given an opportunity to speak as he wished.

Psychologist Dale Fowler, called by defendant,

testified that defendant was incompetent to stand trial. Mr. Fowler had previously evaluated defendant pursuant to a federal court order issued in regard to the federal criminal charges. Mr. Fowler had administered the Minnesota Multiphasic Personality Inventory test and found defendant to be well outside the normal range in impulse control, judgment, and reality testing. Mr. Fowler noted that defendant had an extremely low tolerance for frustration and a great deal of difficulty focusing his attention. Mr. Fowler admitted that defendant understood the nature of the charges against him, but asserted that defendant would not be able to rationally assist counsel. Mr. Fowler also stated that the prognosis for improvement in defendant's ability to communicate with his attorney was not good. In support of this conclusion, he noted that defendant's behavior had deteriorated since the federal court proceedings.

The attorney who had represented defendant in the federal court proceeding testified about his experience and buttressed the conclusion of the psychologist the defendant was irrational, uncontrollable and incompetent to stand trial.

Defendant himself, however, testified that he was ready to go to trial. He insisted that he was entitled to a speedy trial and that if he wasn't given a trial immediately the charges against him would have to be dismissed. He rambled at length about the federal and state "conspiracy" against him and his brother.

At the conclusion of the hearing, the trial court determined that defendant was suffering from a substantial disorder of thought and mood which rendered him incapable of competently assisting counsel. Accordingly, he was again declared incompetent to stand trial.

On July 15, 1982, defense counsel moved to

dismiss the charges against defendant on the ground that defendant remained incompetent 15 months after the original determination of incompetency, and thus that the charges must be dismissed pursuant to the mandate of § 1044 of the Mental Health Code. Defense counsel argued that 17 months had elapsed since the trial court's initial finding of incompetency on March 2, 1981. Counsel further argued that two prior determinations of defendant's incompetency had been made and that the passing of more than 15 months from the date of both those determinations also required dismissal of the charges pending against defendant in Tuscola County. One of the prior findings of incompetency occurred in the federal criminal proceedings already alluded to. Apparently, defendant had also been adjudicated incompetent to stand trial for charges filed in Lapeer County Circuit Court, though defense counsel did not on the record before us reveal the details of those proceedings.

The trial court held that the prior federal and state findings of incompetency were irrelevant to a determination of whether 15 months had passed for purposes of the Tuscola County proceedings. The trial court also found that less than 15 months had passed since its own determination of defendant's incompetency because the operative date under § 1044 was not March 2, 1981, the date its opinion was rendered on defendant's competency, but rather, July 22, 1981, the date the order was entered placing defendant in the custody of the Department of Mental Health. Accordingly, the court concluded that the charges against defendant need not be dismissed until October, 1982.

A third competency hearing was held on September 1, 1982, at which the prosecution introduced the testimony of three expert witnesses. The

issue was closely drawn and the main thrust of the witnesses' testimony was that defendant could be expected to understand the proceedings, assist his attorney and behave appropriately if he was administered 1200 milligrams of lithium per day. The trial court found defendant competent to stand trial, but ordered that defendant should be maintained on lithium prior to and on the day of trial. A jury trial followed in March of 1983 resulting in defendant's conviction. On June 6, 1983, he was sentenced to a prison term of from 32 to 48 months on the felonious assault count and to a consecutive two-year term on the felony-firearm count. Credit was given for 634 days already served.

We hold that the trial court erred in finding that less than 15 months had elapsed between the date on which defendant was determined incompetent and the date on which he was subsequently found to be incompetent. We reverse defendant's conviction.

Section 1044 of the Mental Health Code provides:

"(1) The charges against a defendant determined incompetent to stand trial shall be dismissed:

"(a) When the prosecutor notifies the court of his intention not to prosecute the case; or

"(b) *Fifteen months after the date on which the defendant was originally determined incompetent to stand trial.*

"(2) When charges are dismissed pursuant to subsection (1), the same charges, or other charges arising from the transaction which gave rise to the dismissed charges, shall not subsequently be filed against the defendant, except as provided in this section.

"(3) If the charges were dismissed pursuant to subsection (1) and (b) and if the crime charged was punishable by a sentence of life imprisonment, the prosecutor may

at any time petition the court for permission to again file charges. In the case of other charges dismissed pursuant to subsection (1)(b), the prosecutor may, within that period of time after the charges were dismissed equal to 1/3 of the maximum sentence that the defendant could receive on the charges, petition the court for permission to again file charges.

"(4) The court shall grant permission to again file charges if after a hearing it determines that the defendant is competent to stand trial. Prior to the hearing, the court may order the defendant to be examined by personnel of the center for forensic psychiatry or other qualified person as an outpatient but may not commit the defendant to the center or any other facility for the examination." MCL 330.2044; MSA 14.800(1044). (Emphasis added.)

The appellate courts of this state have not yet specifically ruled on whether the 15-month period in § 1044 is to be calculated from the date the trial court delivers its opinion as to a defendant's competency or from the date, following a finding of incompetency, on which the court enters a written order committing a defendant to the Department of Mental Health. In *People v Davis,* 123 Mich App 553; 332 NW2d 606 (1983), *after remand* 129 Mich App 622; 341 NW2d 776 (1983), however, this Court was presented with the problem of determining whether a written order committing the defendant for competency evaluation or whether the subsequent finding of incompetence by the trial court marked the commencement of the 15-month period. This Court determined that the 15-month period began to run "after an accused is adjudicated incompetent, not after he is [first] ordered committed for diagnostic examination". 123 Mich App 557. The 15-month period was thus calculated from the date of the hearing at which the defendant in *Davis* was found incompetent. We approve the holding and analysis of *Davis* and

apply it in the instant case. Because more than 15 months had elapsed from the date on which the trial court found defendant to be incompetent to stand trial, the charges against him must be dismissed under § 1044.

Our construction of § 1044 is influenced by two additional considerations. First, and as a general rule, procedures for determining a criminal defendant's competence to stand trial are ultimately rooted in principles of due process. *People v Vokes,* 134 Mich App 62, 64; 349 NW2d 819 (1984); *People v Davis, supra,* 123 Mich App 557-558. Provisions of the Mental Health Code should thus be interpreted in a manner that protects incompetent defendants from indefinite denials of liberty. Second, general rules of statutory interpretation require us to give effect to the terms of a statute where those terms are unambiguous. *Dep't of Treasury v Campbell,* 107 Mich App 561, 568; 309 NW2d 668 (1981), *lv den* 413 Mich 935 (1982).

In construing § 1044 in light of these two principles, we find it instructive to consider several other provisions of the Mental Health Code which apply once a defendant has been adjudicated incompetent. Section 1032 of the code authorizes the trial court to order treatment for defendants found to be incompetent, including commitment to the custody of the Department of Mental Health. MCL 330.2032; MSA 14.800(1032). Where treatment is ordered following an initial finding of incompetency, § 1040 allows the trial court to rehear and redetermine issues of competency, particularly upon receipt of any progress reports from the treatment provider and to continue or modify treatment as deemed useful and necessary. MCL 330.2040; MSA 14.800(1040). Section 1034, however, limits the period during which the state may hold the defendant for treatment:

"No order or combination of orders issued under section 1032 or 1040, or both, shall have force and effect for a total period in excess of 15 months or 1/3 of the maximum sentence the defendant could receive if convicted of the charges against him, whichever is lesser; nor after the charges against the defendant are dismissed." MCL 330.2034(1); MSA 14.800(2034)(1).

According to the unambiguous language of § 1034, the period during which "orders" for treatment will be given force and effect is limited to 15 months. It is thus true, as determined by the trial court, that the Department of Mental Health had 15 months within which to treat defendant.

Section 1044, on the other hand, governs the time during which an incompetent defendant may be forced to await the docketing of a case for trial. Once a defendant has been found incompetent to stand trial, the right to be found guilty or not guilty of the pending charges would be indefinitely suspended without the limitation of § 1044, regardless of whether the Department of Mental Health retained custody for treatment. In order to protect defendants from an indefinite suspension of their right to trial, as opposed to an indefinite suspension of their right to liberty, § 1044 requires that charges be dismissed 15 months after the determination of incompetency. Thus, § 1044 refers to determinations of incompetency rather than to orders of treatment, as does § 1034. Given the different purposes served by §§ 1034 and 1044 and the difference in language, it is apparent to us that the Legislature intended the date on which a defendant is "determined incompetent", as used in § 1044, to be the date on which the court made its finding and not, as under § 1034, the date on which the court issued an order remanding a defendant to the custody of the department.

The prosecutor in the instant case failed to

prepare and submit an order committing defendant to the custody of the Department of Mental Health following the trial court's determination of incompetency. The prosecution's lapse placed defendant in limbo for a period of 4-1/2 months. During this time, defendant received no treatment or further psychiatric evaluation, and, since he was laboring under a determination of incompetency, his case could not be scheduled for trial. If we were to accept the prosecution's interpretation of § 1044, competency proceedings could delay trial as long as 2-1/2 years following a finding of incompetency. Under § 1044, a defendant could be prevented from proceeding to trial 15 months after being adjudicated incompetent. At 15 months, the prosecution could obtain an order of treatment from the trial court, thus delaying defendant's right to proceed to trial as long as another 15 months under § 1034. We find that such an interpretation is contrary to the intent of the Legislature in imposing 15-month limitations both on suspensions of liberty and on the right to trial. Since in this case more than 15 months had passed between the original determination of incompetence on March 2, 1981, and September 1, 1982, the date on which defendant was finally adjudicated competent to stand trial, the charges against this defendant should have been dismissed.

We find it unnecessary to decide whether the findings of incompetence in the federal court and in the Lapeer County Circuit Court also require dismissal of the charges against defendant in this case. However, the language in § 1020 of the Mental Health Code, MCL 330.2020; MSA 14.800(1020), that "a defendant to a criminal charge shall be presumed competent to stand trial" suggests to us that the presumption is renewed with the institution of each charge against the defendant. We

would find that a period of incompetence in one criminal proceeding could not be continued over into a different proceeding.

We find it unnecessary to address defendant's challenge to the sufficiency of evidence supporting the trial court's finding of competency.

Reversed.