# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

DEMOND EARL DAVIS,

Defendant-Appellee.

FOR PUBLICATION
April 21, 2015
9:00 a.m.

No. 319436
Wayne Circuit Court
LC No. 13-003985-FH

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

GLEICHER, J.

Defendant is a cognitively impaired young adult. After the district court bound defendant over on unarmed robbery and assault charges, the circuit court questioned whether defendant was competent to stand trial. Initial examination supported defendant's current incompetency but revealed that defendant potentially could be rendered competent to stand trial within 15 months if provided appropriate treatment. For the next two months, defendant remained in county jail because no vacancies opened at an appropriate psychiatric facility. The circuit court then determined that the delay in treatment made it impossible to have defendant ready for trial within the statutory period and dismissed the charges against defendant without prejudice. Because the circuit court lacked statutory authority to dismiss the case over the prosecutor's objections, we reverse.

## I. BACKGROUND

On the afternoon of April 15, 2013, then 17-year-old defendant, along with six other young men, "jumped" a 16-year-old autistic boy and stole his portable gaming system. Detroit police arrested defendant three days later. Defendant waived his rights and admitted, but minimized, his role in the attack. Following preliminary examination, the district court bound defendant over for trial on charges of unarmed robbery and assault with intent to commit great bodily harm less than murder.

On June 6, 2013, the circuit court issued an "order for competency examination" to determine whether defendant was competent to stand trial. Defendant was released on bond until his examination at the Center for Forensic Psychiatry (CFP). On July 27, 2013, family members transported defendant to the center, where he met with a licensed psychologist, Cathie Zmachinski. Accepting reports that defendant was "moderately impaired," Zmachinski noted:

-1-

[Defendant] showed limited comprehension of questions. So, I simplified my questions and comments which facilitated his understanding. His responses were relevant but brief, usually only three to four words long. His thoughts were coherent. He required direct questioning in order to obtain related information. . . . [Defendant] demonstrated other cognitive difficulties. He showed limited abstract reasoning. He showed limited understanding of the world around him. He showed limitations in expressing himself. He demonstrated immature interests. . . . He also showed a tendency to agree without regard to the specific content of some questions. Based on his clinical presentation and understanding of his world, [defendant] appeared to be functioning in the mild mentally retarded range. Additionally, he gave the indication that he was able to process more information than indicated by his verbal responses.

Zmachinski described defendant's memory deficits. In addition, she opined, "Besides his limited insight into his cognitive abilities he showed limited insight into his affective life."

Zmachinski also interviewed defendant's mother, Tiffany Davis. Davis reported that defendant had received special education services since kindergarten, was restless and had difficulty staying on task at home. Davis indicated that defendant had been incarcerated for two months before being released on bond. During that time, the other inmates took advantage of defendant and "beat [him] up."

In relation to defendant's competency to stand trial, Zmachinski opined:

It is my opinion that [defendant] has a limited understanding of the nature and object of the proceedings against him. He was asked some questions about the criminal justice system and in particular about his legal case. He demonstrated the following. He said he could not remember the charges against him. But he could acknowledge them. He was aware of the circumstances from which those charges arose. When asked specifically, he claimed not to know what happens were he to be found guilty or the maximum penalty given his charges. He could recall his attorney "Came to my house-asked about my job-same as you." [Defendant] further indicated his mother was with him while talking to his attorney, "She does a lot of talking." He said he did not know the jobs of the prosecutor or judge. He could not give an explanation of a plea bargain or the essence of a trial. He did however say if you believe the witness was lying, he would tell his attorney. Due to his limited expressive knowledge about the legal system, he was given the CAST-MR. This measure is designed for those with mental retardation. Individuals are asked questions about the criminal justice system in a multiple choice format. Also they are asked questions about various scenarios regarding the legal process. On this measure, [defendant] could correctly identify the basic job of the witness, judge but not the jury, his attorney and the prosecutor. He could identify such words as "Sentence, crime, penitentiary, felony, misdemeanor, and time served." He knew that if found guilty, it would mean the prosecutor proved he did it. He could not identify plea bargaining. Thus, he demonstrated greater knowledge about the system than when asked more open ended questions. But he continued to show some limited

knowledge. [Defendant] also was given various problematic scenarios related to legal charges and arrest. He showed in his answers that he was capable of being protective of himself in the jail and with the prosecutor. But he showed some problems with situations requiring more than a black and white reasoning. His overall performance suggested he knows more about the process than he was able to express. Yet his knowledge was, in my opinion, still considered limited.

In regards to his ability to assist defense counsel in a rational manner, again it is my opinion that this would be limited. To his favor, [defendant] provided a rendition of the incident in question, one similar to that in the police account. He could answer some questions but not others, including his understanding of his behaviors at that time. He was aware of some important elements about his case. For example, he kept repeating important aspects of the assaulted boy's testimony. Although he could not elaborate why this was important, he seemed aware on a basic level that this testimony suggested he had minimal involvement in the crime. [Defendant] also showed an ability to control his behavior within the interview. He also did not demonstrate emotional difficulties. [Defendant] showed limitations in problem-solving and decision-making. He did better when he was given simple choices and the problem was spelled out for him. [Defendant] was quite passive. Given his cognitive abilities and limited knowledge of the legal process, it is my opinion [defendant] would not communicate his concerns sufficiently to his attorney. He would not understand what has been said if more than simple language was used. Given his limited knowledge of the process, this would further limit his comprehension of the process as well as communications with his attorney. It is my opinion were he more knowledgeable about the process he may be less passive and might express some of his concerns. But nonetheless at the current time, it is my opinion that [defendant], due to his cognitive limitations as well as passivity would have significant difficulty assisting his attorney to resolve the current charges.

In summary, due to limited cognitive abilities although [defendant] showed some knowledge about the criminal justice system, in my opinion it was insufficient to be considered him [sic] capable of understanding the nature and object of the proceedings against him. Additionally, again due to this limited knowledge and limited cognitive abilities, it is my opinion that he would have problems assisting defense counsel in a rational manner. Therefore, it is my opinion that [defendant] was incompetent to stand trial.

The next question becomes whether there is a substantial probability that [defendant] could be expected to regain his competency within [the] time period provided by statute and if he were provided with a structured, inpatient, hospital setting with the provision of appropriate therapeutic intervention. It is my opinion [defendant] has some skills which he can draw upon to learn more about the legal process. So with education and treatment, he may acquire a greater knowledge of the process. Additionally given his cognitive skills as being measured in the moderately impaired range, I anticipate that his will take some time. But, it is my opinion that he would be able to gain the knowledge required. With that

knowledge, it is my opinion he would likely be able, in a basic way, to work with his attorney to resolve the current charges.

This report was submitted to the circuit court on August 8, 2013. An August 9, 2013 letter from the CFP director recommended that defendant be treated at Kalamazoo Psychiatric Hospital.

At an August 22, 2013 hearing on the matter, the circuit court followed the CFP's recommendation. However, the court noted, "I'm not completely sold on their conclusion about his ability to . . . attain . . . [c]omptency. And my opinion is based on the fact that they have not received his school records and they have not received the Wayne County Jail information that they have requested." The court directed, "I'm going to have him placed there," meaning the psychiatric hospital. The court then stated its intent to schedule a hearing "within the time period prescribed by law" to determine if defendant had attained competency. Defendant was returned to court custody that day and was transported back to the Wayne County Jail to await transport to the Kalamazoo Psychiatric Hospital. The court's subsequent order provided:

> 8. Commitment is necessary for the effective administration of the course of treatment and therefore the defendant is committed to the custody of the State Department of Mental Health and placed at the facility recommended by the [CFP].

The court's next scheduled hearing occurred on October 29, 2013. Defense counsel informed the court that defendant had remained in jail since the August 22 hearing because the Kalamazoo Psychiatric Hospital did not "anticipate a bed being available for [his] client between six to eight weeks from today's date." Counsel argued that the administrative delay had interfered with defendant's right to be free on bond pending trial. Counsel did not request the dismissal of the charges, only that defendant be released to his mother's care pending treatment. The prosecution objected to defendant's release on bond as the underlying offense was assaultive in nature and out of fear that defendant might "fall through the cracks if he is not there and waiting for the bed when it becomes available."

The court expressed displeasure at the course of events, noting defendant "has gone untreated, basically, for five months." The court continued:

> I think that when a person who has been determined to not be competent is kept in jail and not treated, it kind of gets to cruel and unusual punishment.
>
> I mean, we have a place for people that are not competent. And it is in a state facility to help them restore them to competence. I don't want to be a part of a system that jails incompetent people, that incarcerates people who don't have the capacity to stay in the criminal justice system.
>
> To me, that's not the way that you deal with, you know, mental health challenges, to jail them and not treat them. And that's exactly where [defendant] is. He has been found not to be competent. And we have incarcerated a person that is not competent, would not have known that he was on a wait list. . . .

* * *

-4-

. . . But somebody believes that it's all right to incarcerate incompetent people. And I don't.

Originally, this Court made a finding that, based on the report, that it was likely that he would regain competence through treatment. There has been no treatment. They're projecting out that he still won't be treated for another two months.

I'm going to, based on the new information that I have, find that he would not be restored to competence in the allotted time that they have to treat him based on the fact that he is not being treated. And, therefore, I will leave the People to their other remedy of trying to process [defendant] through the civil branch. . . .

\* \* \*

. . . I can disagree with the findings that the [CFP] had said. They thought that, based on what they saw, that they would be able to restore him. I have the ability to accept their recommendations and their findings or say, you know, I don't think that that's true. I disagree with the report. And so, I can find that he is incompetent to stand trial and that there is not a substantial probability that competency will be attained within the time established by law.

The prosecutor objected, "But doesn't the Court need to have a hearing and have another individual who would concur with that opinion[?]" The court disagreed with this approach:

No. No. It's . . . a judicial decision. It's not a, you know, here's one psychiatrist that says this. This is one psychiatrist that says that. It's a judicial determination whether I want to accept their findings or to reject their findings. It's not -- We've already -- You all have stipulated to the report, which is fine.

But I'm finding that that report now doesn't provide this Court with the information that I believe it needs in order to now look back and say: Oh. Okay. Well, I still agree that there's a probability that the defendant, if provided a course of treatment, will attain competence to stand trial within the time limits established. I don't believe that that's true now.

Upon the prosecutor's reiterated objection, the court continued:

An objection already for the first thing, that he shouldn't be released. And I don't think this is a release thing. I think this is the Court can make a finding that, based on the inaccuracies now, that the initial report that the Court received back on August the 22nd, that incarcerating an incompetent person, first of all, isn't what the Department of Corrections wants to be involved in. I don't think justice says that we incarcerate people who are incompetent. There is a guess as to when [defendant] will be treated, based on the letter that we all received.

And that's not sufficient for this Court then to say that there is a substantial probability that competence will be attained within the time limits established. So, I am changing my findings, based on the new information, and will leave the People to try to civilly commit [defendant], since they're concerned about his mental health, as we all are. And if he returns to competence through the civil division, then certainly the People should, and I encourage them then, to refile this and let a competent person proceed through the criminal justice system.

The circuit court subsequently entered an order dismissing the action without prejudice on the following ground: "The court determines defendant is incompetent and likely will not achieve competency within the prescribed time period. Prosecutor will proceed in civil court." The court also entered a "finding and order on competency" repeating its directives.

The prosecutor appealed the circuit court's dismissal of the charges against defendant. In his appellate brief, the prosecutor contends that the circuit court "erred in at least two respects." First, the court improperly "determined without holding a hearing that defendant could not attain competence within 15 months." While the court was permitted to change its mind, the prosecutor posits that a hearing where the prosecutor could present "additional facts germane to the findings" was necessary. Second, the prosecutor asserts, the court "dismissed the case before expiration of the 15 months from the initial finding that defendant was incompetent."

## II. STANDARD OF REVIEW

The circuit court's dismissal of the charges against defendant was based on its interpretation of the competency-hearing statutes. We review de novo issues of statutory interpretation. *People v Plunkett*, 485 Mich 50, 58; 780 NW2d 280 (2010).

The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. The first step in ascertaining the Legislature's intent is to review the specific language of the statute. The Legislature is presumed to have intended the meaning it plainly expressed and, therefore, clear statutory language must be enforced as written. [*People v Szabo*, 303 Mich App 737, 741; 846 NW2d 412 (2014) (citations omitted).]

This case also presents constitutional issues for both sides. On the one hand, the prosecution of a case is an executive act, and a "trial court's authority over the discharge of the prosecutor's duties is limited" to situations in which a prosecutor's actions "are unconstitutional, illegal, or ultra vires." *People v Morrow*, 214 Mich App 158, 160-161; 542 NW2d 324 (1995). See also *People v Sierb*, 456 Mich 519, 533; 581 NW2d 219 (1998) ("[A]bsent a violation of the constitution or specific statutory authority, we are not persuaded that we have the authority or the wisdom to monitor the performance of the elected prosecutor."). Though a trial judge "may veto the prosecutor's decision not to prosecute further," the opposite is not true; a trial judge generally may not dismiss charges sua sponte over a prosecutor's objection. *Morrow*, 214 Mich App at 162. On the other side of the coin lies a criminal defendant's constitutional liberty interest. In this vein, the United States Supreme Court has held that a state may not hold a defendant indefinitely "simply on account of his incompetency to stand trial on the charges filed against him." *Jackson v Indiana*, 406 US 715, 720; 92 S Ct 1845; 32 L Ed 2d 435 (1972). Such

indefinite commitment amounts to a due process violation. *Id.* at 731. We review de novo such constitutional considerations. See *People v Harper*, 479 Mich 599, 610; 739 NW2d 523 (2007).

## III. STATUTORY RUBRIC

In Michigan, the competence of criminal defendants to stand trial is governed by provisions of the Mental Health Code. MCL 330.2020 *et seq.* As a general rule, a criminal defendant is "presumed competent to stand trial." MCL 330.2020(1). A criminal defendant "shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." *Id.* The statute places this determination in the court's hands. *Id.* ("The court shall determine the capacity of a defendant . . . .").

The prosecutor, defense counsel, and the trial court all hold the power to raise the issue of a defendant's competency. MCL 330.2024. When the issue arises, the court must order the defendant's examination by the CFP or other qualified facility. MCL 330.2026(1). The defendant may remain in jail pending and even during the examination. MCL 330.2026(2). However, a report regarding the defendant's competence must be presented to the court within 60 days. MCL 330.2028(1).

"A defendant who is determined incompetent to stand trial shall not be proceeded against while he is incompetent." MCL 330.2022(1). Once a defendant becomes competent, the prosecution may go forward. Whether the CFP opines that the defendant is competent or incompetent, the court must conduct a hearing within five days of receiving its report. MCL 330.2030(1).

> On the basis of the evidence admitted at the hearing, the court shall determine the issue of the incompetence of the defendant to stand trial. If the defendant is determined incompetent to stand trial, the court shall also determine whether there is a substantial probability that the defendant, if provided a course of treatment, will attain competence to stand trial within the time limit established by [MCL 330.2034]. [MCL 330.2030(2).]

The time limit established under MCL 330.2034(1) is "15 months or 1/3 of the maximum sentence the defendant could receive" if convicted as charged, "whichever is lesser." Defendant's charges come with 10 and 15-year maximum sentences. See MCL 750.84(1); MCL 750.530(1). Accordingly, the 15-month period is applicable in the current case.

In the event the court determines that the defendant cannot be rendered competent to stand trial within 15 months, MCL 330.2031 permits the court to direct the prosecutor to pursue civil commitment procedures:

the court may direct a prosecuting attorney to file a petition asserting that the defendant is a person requiring treatment as defined by [MCL 330.1401[1]] or meets the criteria for judicial admission as defined by [MCL 330.1515[2]] with the probate court of the defendant's county of residence.

If the court finds a substantial probability that the defendant could be rendered competent to stand trial within 15 months, MCL 330.2032 governs the provision of treatment:

(1) If the defendant is determined incompetent to stand trial, and if the court determines that there is a substantial probability that, if provided a course of treatment, he will attain competence to stand trial within the time limit established by [MCL 330.2034], the court shall order him to undergo treatment to render him competent to stand trial.

(2) The court shall appoint a medical supervisor of the course of treatment. The supervisor may be any person or agency willing to supervise the course of treatment, or the department of mental health.

(3) The court may commit the defendant to the custody of the department of mental health, or to the custody of any other inpatient mental health facility if it agrees, only if commitment is necessary for the effective administration of the course of treatment. If the defendant, absent commitment to the department of mental health or other inpatient facility, would otherwise be held in a jail or similar place of detention pending trial, the court may enter an order restricting the defendant in his movements to the buildings and grounds of the facility at which he is to be treated.

MCL 330.2034, as discussed, creates a time limit for the provision of treatment, i.e. 15 months:

(1) No order or combination of orders issued under [MCL 330.2032 or MCL 330.2040], or both, shall have force and effect for a total period in excess of 15

---

[1] A "person requiring treatment," as defined by MCL 330.1401(1), encompasses individuals with mental illness, not cognitive impairments.

[2] MCL 330.1515 provides:

A court may order the admission of an individual 18 years of age or older who meets both of the following requirements:

(a) Has been diagnosed as an individual with an intellectual disability.

(b) Can be reasonably expected within the near future to intentionally or unintentionally seriously physically injure himself or herself or another person, and has overtly acted in a manner substantially supportive of that expectation.

months or 1/3 of the maximum sentence the defendant could receive if convicted of the charges against him, whichever is lesser; nor after the charges against the defendant are dismissed.

(2) The court shall provide for notification of defense counsel, the prosecution, and the medical supervisor of treatment whenever the charges against the defendant are dismissed and whenever an order whose stated time period has not elapsed is voided by the court.

(3) If the defendant is to be discharged or released because of the expiration of an order or orders under [MCL 330.2032 or MCL 330.2040], the supervisor of treatment prior to the discharge or release may file a petition asserting that the defendant is a person requiring treatment as defined by [MCL 330.1401] or meets the criteria for judicial admission as defined by [MCL 330.1515] with the probate court of the defendant's county of residence [, i.e. a civil commitment].

When a defendant has been deemed incompetent to stand trial, the medical supervisor of treatment is required to periodically supplement his or her report to the court "at least once every 90 days." MCL 330.2038(1)(a). Reports are also required

(b) Whenever he is of the opinion that the defendant is no longer incompetent to stand trial.

(c) Whenever he is of the opinion that there is not a substantial probability that the defendant, with treatment, will attain competence to stand trial within the time limit established by [MCL 330.2034]. [MCL 330.2038(1).]

MCL 330.2040 governs the determination of a defendant's continued incompetency to stand trial:

(1) The court shall forthwith hear and redetermine the issue of the incompetence of the defendant to stand trial and, if the defendant is redetermined incompetent to stand trial, shall hear and determine whether the defendant has made progress toward attaining competence to stand trial during his course of treatment, whenever the court receives a report from the supervisor of treatment, unless the defense waives the hearing, or whenever deemed appropriate by the court.

(2) [MCL 330.2030] shall govern hearings held pursuant to this section.

(3) If the defendant is not redetermined incompetent to stand trial at a hearing held pursuant to this section, trial shall commence as soon as practicable. If the defendant is redetermined incompetent to stand trial, and if the court determines that the defendant has made progress toward attaining competence to stand trial, the court may modify or continue any orders it previously issued under [MCL 330.2032].

The defendant's time spent incarcerated or institutionalized pending competency to stand trial is not simply wasted time; it may be credited against the defendant's eventual sentence. MCL 330.2042.

The dismissal of charges is governed by MCL 330.2044, which provides:

(1) The charges against a defendant determined incompetent to stand trial shall be dismissed:

(a) When the prosecutor notifies the court of his intention not to prosecute the case; or

(b) Fifteen months after the date on which the defendant was originally determined incompetent to stand trial.

(2) When charges are dismissed pursuant to subsection (1), the same charges, or other charges arising from the transaction which gave rise to the dismissed charges, shall not subsequently be filed against the defendant, except as provided in this section.

* * *

(4) The court shall grant permission to again file charges if after a hearing it determines that the defendant is competent to stand trial. Prior to the hearing, the court may order the defendant to be examined by personnel of the center for forensic psychiatry or other qualified person as an outpatient, but may not commit the defendant to the center or any other facility for the examination.

IV. ANALYSIS

The prosecutor correctly contends that the circuit court was not permitted to dismiss the charges under the circumstances presented.

A. PREREQUISITE HEARING

It is within the power of the circuit court to "determine the capacity of a defendant." MCL 330.2020(1). That decision, as with any judicial decision, must be based in fact. See *Demosthenes v Baal*, 495 US 731, 735; 110 S Ct 2223; 109 L Ed 2d 762 (1990). The judgment of a defendant's competence and "whether there is a substantial probability that the defendant" could attain competence must be based on "the evidence admitted at the hearing." MCL 330.2030(2). The circuit court conducted such a hearing on August 22, 2013. The only evidence at the hearing was the CFP report, which indicated that defendant's cognitive impairment rendered him currently incompetent to stand trial, a point with which the court agreed. The report also included the evaluator's opinion that education regarding the legal process could allow defendant "in a basic way, to work with his attorney," allowing him to potentially attain competence within 15 months. Although the court was "not completely sold" on this conclusion, it accepted the report and held defendant for treatment geared toward preparing him for trial.

-10-

The lack of treatment in the interim prompted the court to change its mind at the October 29 hearing. The only evidence at the hearing was that the Kalamazoo Psychiatric Hospital would not have an open bed for other six to eight weeks. From this fact alone, the circuit court jumped to the conclusion that defendant would not be able to attain the requisite level of competency to stand trial within the statutory 15-month period. More is required by the Mental Health Code, however.

MCL 330.2030(2) demands that a competency determination be made "[o]n the basis of the evidence admitted at the hearing" following the presentation of the CFP report. MCL 330.2040 similarly demands a hearing before a "redetermination" of competency is made. If the defendant remains incompetent, MCL 330.2040(1) mandates that the court "hear and determine whether the defendant has made progress toward attaining competence." Such a hearing must be held each time the CFP provides a supplemental report (unless waived by the defendant), or at other times "deemed appropriate by the court." And any hearing conducted pursuant to MCL 330.2040(1) must comport with MCL 330.2030. MCL 330.2040(2).

Here, there was no subsequent report from the CFP. Accordingly, the October 29 hearing was scheduled based on the circuit court's discretionary power under MCL 330.2040(1). The October 29 hearing had to be conducted consistent with the procedures of MCL 330.2030. MCL 330.2030(2) provides, "The defense, prosecution, and the court on its own motion may present additional evidence relevant to the issues to be determined at the hearing." The court denied the prosecutor the opportunity to present additional evidence, ruling that competency is "a judicial decision" and would be made solely on the stipulated CFP report. While the CFP report was admissible, MCL 330.2030(3), this was not to the exclusion of other evidence the prosecutor may have wanted to present. Absent a hearing at which the prosecutor could present evidence regarding defendant's ability to attain competence, the court improperly rendered any decision regarding defendant's continued incompetence.

## B. REMEDY OF DISMISSAL

Moreover, with or without a hearing, dismissal of the charges against defendant was not the proper remedy. MCL 330.2044 "is the procedural vehicle for enforcing a defendant's right not to be confined solely because of incompetency." *People v Miller*, 440 Mich 631, 636; 489 NW2d 60 (1992). MCL 330.2044(1) provides only two circumstances meriting a trial court's dismissal of the criminal action: (a) upon notification by the prosecutor of his intent to drop the charges, and (b) if the defendant remains incompetent to stand trial 15 months after the original incompetency ruling. Neither of these situations existed in this case. The prosecutor repeatedly expressed his desire to pursue the pending charges. And at the time of the October 29, 2013 hearing, 15 months had not elapsed since the original incompetency determination. Accordingly, the circuit court lacked statutory authority simply to dismiss the matter.

In *Jackson*, 406 US at 717, the defendant was a deaf, mute, severely mentally impaired man who could only communicate through rudimentary sign language. On two separate occasions, the defendant stole property from women with a total value of $9. *Id.* Evidence at a pretrial competency hearing revealed that no level of treatment could render the defendant competent to stand trial. *Id.* at 718-719, 725. Even so, the trial court ordered the defendant's commitment "until such time as [the Indiana Department of Mental Health] should certify to the

court that 'the defendant is sane.' " *Id.* at 719. The defendant's appeal travelled all the way to the Supreme Court because it amounted to an indefinite commitment despite that he had never been convicted of a criminal offense. *Id.*

The Indiana statutes governing "pretrial commitment of incompetent criminal defendants," like those in Michigan, grant the authority to render the incompetency decision to the trial court alone. *Id.* at 720. The Indiana statutes, however, authorized the court to detain the criminal defendant indefinitely in the treatment facility until "whenever the defendant shall become sane." *Id.* Moreover, the Indiana scheme did not provide for periodic court review of the criminal defendant's mental condition. *Id.* The defendant in *Jackson* contended that the court should have proceeded under the state's civil commitment procedures to protect the defendant's rights. *Id.* at 721. Under the civil procedure, a "feeble-minded" person may be released from confinement upon such time that the supervising agency deems that "the mental and physical condition of the patient justifies it." *Id.*

Relevant to the current appeal, the United States Supreme Court held: "Indiana's indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment's guarantee of due process." *Id.* at 731. The indefiniteness of the commitment period arises because the statutes take no account of the defendant's likelihood of improvement, requiring institutionalization until the defendant attains sanity. *Id.* at 725, 727.

The Court pointed to the federal procedures for managing incompetent criminal defendants as a contrast. Under 18 USC 4246, a criminal defendant could be held before trial "until the accused shall be mentally competent to stand trial." Federal courts had applied the subsequent statutory provision, 18 USC 4247, to such pretrial commitments even though it facially applied only to convicted defendants deemed incompetent while serving their sentences. *Jackson*, 406 US at 731-732. Section 4247 permitted commitment of a prisoner, rather than release at the natural end of his sentence, if deemed "insane or mentally incompetent" and a danger to himself or others. *Jackson*, 406 US at 732. Under this rubric, the prisoner must be released once he is no longer a danger. *Id.* The federal courts applied this statute to create "a 'rule of reasonableness' " for pretrial detention. *Id.* at 733. Specifically, if a defendant is deemed incompetent to stand trial, he "can be held only for a 'reasonable period of time' necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future. If the chances are slight, or if the defendant does not in fact improve, then he must be released" or granted a hearing to consider whether he poses a danger. *Id.*

Later that same year, the United States Supreme Court considered the detention of incompetent individuals beyond the expiration of their criminal sentence. In *McNeil v Director, Patuxent Institution*, 407 US 245, 246; 92 S Ct 2083; 32 L Ed 2d 719 (1972), the defendant was convicted of assault and sentenced to five years' imprisonment. The sentencing court ordered the defendant's transport to Patuxent Institution, rather than prison, "to determine whether he should be committed to that institution for an indeterminate term" as a defective delinquent. *Id.* The defendant remained institutionalized after the expiration of his sentence, the Institution alleged, because he refused to cooperate so that a valid assessment could be made. *Id.* The defendant's challenge was not to the "criteria and procedures" governing Maryland defective-

delinquency hearings; no such hearing had yet been conducted. *Id.* at 248. Rather, the defendant's challenge was that "[h]is confinement rest[ed] wholly on the order committing him for examination, in preparation for such a commitment hearing." *Id.* "That order was made, not on the basis of an adversary hearing, but on the basis of an ex parte judicial determination that there was 'reasonable cause to believe that the Defendant may be a Defective Delinquent,' " the Court continued. *Id.* (citation omitted).

The Institution in *McNeil* raised two grounds to support its indefinite commitment of the defendant: "that a commitment for observation need not be surrounded by the procedural safeguards (such as an adversary hearing) that are appropriate for a final determination of defective delinquency," *id.* at 249, and that the defendant's commitment was akin to a civil contempt because his obstreperous behavior prevented examination. *Id.* at 250. The Supreme Court rejected both contentions. In relation to the first, the Court held, "A confinement that is in fact indeterminate cannot rest on procedures designed to authorize a brief period of observation." *Id.* at 249. Citing *Jackson*, 406 US at 738, the *McNeil* Court further held:

> If the commitment is properly regarded as a short-term confinement with a limited purpose, as the respondent suggests, then lesser safeguards may be appropriate, but by the same token, the duration of the confinement must be strictly limited. "Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Just as that principle limits the permissible length of a commitment on account of incompetence to stand trial, so it also limits the permissible length of a commitment "for observation." [*McNeil*, 407 US at 249-250.]

The Court declined to "set a precise time limit" as the Maryland statute actually included a six-month observation period. *Id.* at 250. The state had violated the intention of this protection by permitting repeated extensions. *Id.*

In relation to the second ground, the Court noted, "if confinement is to rest on a theory of civil contempt, then due process requires a hearing to determine whether petitioner has in fact behaved in a manner that amounts to contempt." *Id.* at 251. The hearing would permit the trial court to determine whether the defendant's contemptuous conduct was actually caused by mental illness, or whether it was a willful violation of court orders. *Id.* In *McNeil*, the defendant had essentially been confined on the basis of contempt "potentially for life, although he ha[d] never been determined to be in contempt by a procedure that comports with due process." *Id.* The meat of *McNeil* is that a defendant is entitled to a hearing and resolution of his competency within a reasonable time to ensure he is not held without just cause.

Just as stated in *McNeil*, in Michigan, a criminal defendant may not be held indefinitely. The statutes provide a 15-month period in which the defendant must be rendered competent to stand trial. If the defendant cannot be so rendered, the prosecutor must pursue civil commitment measures to maintain the defendant in care. This Court has upheld detainment in the face of this statutorily-designated reasonable-delay period.

In *People v Davis*, 123 Mich App 553, 557; 332 NW2d 606 (1983), a two-year delay separated "the original order for commitment for forensic examination and the administration of

-13-

the examination." During that time, the defendant had been the subject of a civil commitment and absconded for approximately seven months from the psychiatric institution. *Id.* at 556. The defendant contended that the circuit court was required to dismiss the charges against him pursuant to MCL 330.2044(1)(b) because 15 months had elapsed since he was first deemed incompetent and he had yet to attain competency to stand trial. *Davis*, 123 Mich App at 557. This Court disagreed with the defendant's calculation of the confinement period following the initial competency determination. *Id.* Citing *Jackson* and *McNeil*, this Court held "that an individual may not be committed to a psychiatric institution for an extended period except after a due process hearing." *Id.* at 558. In *Davis*, however, the defendant was held in the psychiatric facility for a fixed period as a result of his guilty plea, so that no due process violation occurred. *Id.* Ultimately, however, the *Davis* Court remanded for further consideration of the defendant's speedy trial claim. *Id.* at 560.

In *People v Bowman*, 141 Mich App 390, 393-396; 367 NW2d 867 (1985), the defendant was repeatedly found incompetent to stand trial in both state court and a previous federal court prosecution. He eventually stood trial in state court when the administration of psychotropic medications rendered him competent to understand the proceedings. *Id.* at 397. The question in *Bowman* was the start date of the 15-month period for purposes of MCL 330.2044. *Id.* at 398. This Court's analysis, however, bears relevance to this appeal. The *Bowman* Court noted that "procedures for determining a criminal defendant's competence to stand trial are ultimately rooted in principles of due process." *Id.* at 399. The statutes therefore must "be interpreted in a manner that protects incompetent defendants from indefinite denials of liberty." *Id.* Construing various provisions together, this Court held that the mental health department has only 15 months to treat the defendant so he can attain competency. *Id.* at 399-400. MCL 330.2044 protects a defendant from an indefinite wait after being found incompetent to stand trial, this Court adjudged. "In order to protect defendants from an indefinite suspension of their right to trial, as opposed to an indefinite suspension of their right to liberty, [MCL 330.2044] requires that charges be dismissed 15 months after the determination of incompetency." *Bowman*, 141 Mich App at 400.

The circuit court exaggerated the delay that arguably could be attributed to the prosecution in this case. Defendant was released on bond two months after his arrest, and remained free until the August 22 hearing. He was held in the Wayne County Jail from August 22 through October 29, a period of two months and one week. The waiting list for the Kalamazoo Psychiatric Hospital would have extended defendant's jail confinement for approximately four months total after the issue of competency had been raised, but defendant had in fact been detained for only two months at the relevant time. This delay bears no similarity to the indefinite confinements in *Jackson*, 406 US 715, and *McNeil*, 407 US 245. Moreover, neither statutory nor constitutional grounds supported dismissal of the charges based on the delay. We do not suggest that the circuit court's concern for incarcerating a cognitively-impaired 17-year-old boy was misplaced, only that the court chose an impermissible remedy. Ordering defendant's segregation in the jail or releasing defendant to his family's care on house arrest would have served the same purpose without violating the statutory provisions.

Given the lack of a proper hearing and the short duration of the delay, the court was not permitted to dismiss the charges over the prosecutor's objection. We must therefore reverse.

## C. ALTERNATE GROUNDS FOR AFFIRMANCE

Defendant characterizes the legal arguments placed before this Court differently and we will consider them as alternate grounds for affirming the circuit court's decision. Defendant asserts that the circuit court actually dismissed the charges because "the court ordered examination regarding Defendant's competency to stand trial did not take place within the statutorily mandated 60 days." In this regard, defendant relies upon MCL 330.2028(1), which directs that when a court orders a forensic examination of a defendant's competency to stand trial under MCL 330.2026, the initial CFP report must be submitted within 60 days. This deadline was not relevant at the October 29 hearing. The court ordered defendant's examination on June 6, and the CFP had 60 days from that date to submit its initial report. The CFP submitted its report to the court on August 8 without objection. After the August 22 hearing, the examining authority had 90 days to submit a follow-up treatment report. MCL 330.2038(1)(a). Less than 90 days elapsed between the August and October hearings and defendant raises no challenge based on MCL 330.2038.

Defendant also claims that any error in dismissing the charges was harmless because the court's order was entered without prejudice. In this regard, defendant cites *Miller*, 440 Miller 631, for the proposition that "failure to adhere to the statutory requirements regarding dismissal, which allow for the refiling of charges, is merely a procedural error resulting in harmless error and does not require reversal." *Miller* is inapposite.

In *Miller*, 440 Mich at 634-635, a defendant was found incompetent to stand trial, attained competency through treatment, but then regressed. The defendant was deemed incompetent to stand trial for a total period greater than 15 months. Further treatment returned the defendant to competency, he stood trial, and was convicted of first-degree criminal sexual conduct. *Id.* at 635. Once the total period of the defendant's incompetency to stand trial spanned 15 months, the defendant repeatedly sought dismissal of the charges against him under MCL 330.2044, but the trial court rejected his attempts. *Id.* This Court reversed the defendant's convictions, holding that dismissal was required because the defendant was incompetent at the time he filed his motion and more than 15 months had elapsed since he was first adjudged incompetent to stand trial. *Id.*

The Supreme Court reversed this Court's opinion and reinstated the defendant's convictions. The Court cited MCL 330.20144(3) and (4), which permit the prosecution to refile charges against a defendant once he regains competency. Because the charges could be refiled, the failure to dismiss the charges during the period of incompetency was harmless:

> A violation of [MCL 330.2044(1)(b)] predicated solely on the erroneous denial of a motion to dismiss constitutes a ground for reversal only where it is claimed that the failure to dismiss denied defendant a substantive right, to wit: the barring of the charge or prejudice caused by the delay resulting from a violation of [MCL 330.2044(1)(b)]. Failure to dismiss after expiration of a total period of fifteen months is not error on which reversal can be predicated. [*Miller*, 440 Mich at 636.]

The Court continued:

> Although hardly a model of clarity, the structure of the act and the legislative history suggest that [MCL 330.2044(3) and (4)] are limitation provisions and that reversal of a conviction would be warranted in respect to nonlife offenses only where the time lapse from initial adjudication of incompetence exceeds one third of the maximum sentence or causes prejudice to the defendant's substantive rights. [*Id.* at 637.]

Unlike in *Miller*, the circuit court in this case dismissed the charges against defendant because he had yet to begin treatment geared toward attaining competency, and treatment would likely be delayed another two months. The court did not dismiss the charges because the 15-month statutory period had expired. Indeed, defendant's period of incompetency had lasted nowhere near this limitation period. Based on the delay, the circuit court reversed its initial determination and found that defendant would not likely attain competence within the 15-month statutory period. However, the delay in beginning defendant's treatment was an insufficient basis to support that defendant was unlikely to attain competence. The circuit court's focus must be "whether, *if provided a course of treatment*, a substantial probability exists that a defendant found to be incompetent will attain competence within the time limit established." *Id.* at 637-638 (emphasis added). Once the circuit court initially determined that defendant could attain competence, the Kalamazoo Psychiatric Hospital had a full "15 months within which to treat defendant." *Bowman*, 141 Mich App at 400. The hospital notified the court that it would be unable to treat defendant for another six to eight weeks, amounting to a total four-month delay between being adjudged incompetent to stand trial and beginning treatment. Though such a delay is not preferable and should be avoided if at all possible, it is mere speculation that defendant would remain incompetent for the entire 15 months provided by statute. MCL 330.2034(1). Therefore, the circuit court lacked statutory authority to dismiss the charges and its error was not harmless under *Miller*.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

-16-