# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RALPH HARVEY COTTENHAM,

Defendant-Appellant.

UNPUBLISHED
May 15, 2018

No. 338449
Saginaw Circuit Court
LC No. 16-042662-FC

---

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of second-degree murder, MCL 750.317. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 60 to 90 years' imprisonment. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's conviction arose from the April 28, 2016 killing of his stepdaughter, Amber Morris. Amber's sister, Holly Morris, testified that she and Amber remained friends with defendant after their mother died in October 2014. Holly testified that Amber and defendant worked together and that defendant would give Amber prescription drugs. Brandon Thomas, Amber's fiancé, agreed that Amber used prescription drugs such as tramadol, that she was addicted to prescription drugs, and that defendant would give her money and prescription drugs. Thomas stated that defendant wanted Amber "to come around all the time" and would "bribe" her with money to spend time with him.

The prosecution's primary witness was Cody Sweet, defendant's son. Sweet had been estranged from defendant for most of his life, but began living with defendant in January 2016, having met him only once before. Sweet testified that defendant wanted a "sexual relationship" with Amber. Similarly, Holly described an incident, "about 45 days before [her] sister died," in which defendant "was texting [Amber], asking me, is this enough money to ask her for oral sex?" Holly testified that she once took defendant's phone away from him because he was excessively texting Amber. Holly also recalled a time when defendant was upset with Amber and said, "I'll kill that b***h." Holly said that defendant apologized the next day and blamed the statement on being drunk. At trial, Sergeant Matthew Gerow of the Saginaw Police Department recited a series of text messages between defendant and Amber that began on March 29, 2016.

-1-

In those messages, defendant offered Amber money in exchange for sexual favors and told her that their relationship would end if she declined. In her responses, Amber adamantly and repeatedly declined the offers.

On the afternoon of April 28, 2016, Sweet returned home from work and found Amber and defendant drinking alcohol in the living room. Sweet took a nap until the evening; when he awoke, Sweet observed that Amber and defendant were arguing, which he testified was not unusual. Sweet said that after Amber left the home, defendant called 9-1-1 in an attempt "to get her arrested for a DUI." According to Sweet, defendant said he was "tired" of "the way she was treating him." Later that evening, defendant told Sweet that Amber would be returning to the house that night. Sweet testified that defendant said he was "going to kill her," but Sweet assumed that he was joking. When Amber returned, she and defendant conversed in the living room while Sweet was in his bedroom. Sweet heard defendant tell Amber that "he had to show her something in the basement." Sweet said that after defendant and Amber went to the basement, he heard "a little bit of argument, commotion." Specifically, Sweet thought that Amber might have said "help," but he stated that he "didn't want to get involved." The noise ceased, and about 10 minutes later defendant entered Sweet's bedroom and told him that he had killed Amber. Sweet rushed downstairs and observed Amber lying face-down on the floor. Sweet said that defendant proceeded to "kick" and "stomp" on Amber to prove that she was deceased. Defendant then pulled Amber's pants and underwear down and digitally penetrated her. Sweet asked defendant to stop; he did so after "30 seconds to a minute." Sweet also testified that he observed a "ratchet strap" wrapped around Amber's neck; he stated that defendant told him that he had "tried knocking her out" but then used the strap to "choke her." Sweet then helped defendant move Amber's body to the trunk of her vehicle. Sweet said that he helped defendant out of fear for his life. Defendant then proceeded to clean up the basement with towels and bleach. Defendant instructed Sweet to meet him at a bar and then left in Amber's vehicle. Sweet picked defendant up from that location, leaving Amber's vehicle there.

The police found Amber's body in the trunk of the vehicle the next day. Within a couple of days, defendant invited Holly to his house. Holly thought it was unusual that they were "chilling" outside on the patio because they usually "hang out in the house." When Holly later entered defendant's bathroom, she observed a strong odor of bleach. She also noticed that the basement windows were open, which also was unusual. She testified that at one point defendant asked her, "[Y]ou don't think I did anything to your sister, do you?"

Dr. Kanu Virani performed Amber's autopsy. He testified that toxicology testing revealed that alcohol and tramadol were in her system when she died, and opined that the cause of death was "a combination of drug intoxication and asphyxia." Dr. Virani could not say whether asphyxiation or drug intoxication was the sole cause of death. Dr. Virani said that the level of tramadol in Amber's system was "in a toxic range," but explained that there is not a "defined overdose" for the drug because a person can develop a tolerance to it. Dr. Virani said that there was "faint bruising" on Amber's face and both sides of her neck. He opined that the

markings on Amber's neck were inconsistent "with any string or belt"[1] and indicated that they were consistent with a human hand. Dr. Virani concluded that the manner of Amber's death was a homicide because of "asphyxia and the bruising on the face and the neck."

Sweet testified that he stopped residing at defendant's home within a few days after defendant killed Amber. Through his attorney, Sweet contacted Sergeant Gerow and disclosed defendant's crime. Sweet was granted immunity from prosecution, and defendant was charged with open murder. The prosecution's theory was that defendant had strangled Amber with his hands and then used the ratchet strap "just to make sure he finished the job . . . ." Defendant's theory of the case was that Sweet had killed Amber out of jealousy for defendant's attention.

Defendant was convicted as described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence presented at trial to allow a rational jury to conclude that he had caused Amber's death. We disagree.

We review de novo claims of insufficiency of the evidence. *People v Kloosterman*, 296 Mich App 636, 639; 823 NW2d 134 (2012). "A court reviewing the sufficiency of the evidence must view the evidence in the light most favorable to the prosecution and determine whether the evidence was sufficient to allow any rational trier of fact to find guilt beyond a reasonable doubt." *Id*. "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Kosik*, 303 Mich App 146, 151; 841 NW2d 906 (2013).

"[T]he elements of second-degree murder are as follows: (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "In criminal jurisprudence, the causation element of an offense is generally comprised of two components: factual cause and proximate cause." *People v Schaefer*, 473 Mich 418, 435; 703 NW2d 774 (2005), overruled in part on other grounds by *People v Derror*, 475 Mich 316, 342; 715 NW2d 822 (2006), overruled in part on other grounds by *People v Feezel*, 486 Mich 184; 783 NW2d 67 (2010). "Factual causation exists if a finder of fact determines that 'but for' defendant's conduct the result would not have occurred." *Feezel*, 486 Mich at 194-195. Proximate cause "is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." *Schaefer*, 473 Mich at 436. "For a defendant's conduct to be regarded as a proximate cause, the victim's injury must be a direct and natural result of the defendant's actions, and an intervening cause must not sever the causal link." *People v Laidler*, 491 Mich 339, 346 n 2; 817 NW2d 517 (2012) (quotation marks and citation omitted).

---

[1] Dr. Virani testified that a rope or strap placed around Amber's neck after her death would not have left a mark.

Defendant asserts that the prosecution's theory was that defendant strangled Amber with a ratchet strap, which was not corroborated by the medical examiner's testimony. Defendant misstates the prosecution's theory of the case. The prosecution argued that defendant strangled Amber with his hands and then used the strap to ensure that he had killed her. The medical examiner explained that a person does not bruise after death. Further, Sweet merely testified that defendant had told him that he used the strap to choke Amber; Sweet did not observe that act and the prosecution did not rely on that portion of his testimony or even assert that Amber had been choked with a strap. In any event, "a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). Therefore, the evidence was not inconsistent with the prosecution's theory, as defendant suggests.

Further, there was sufficient circumstantial evidence presented for the jury to find beyond a reasonable doubt that defendant had strangled Amber. Sweet testified that defendant had said that he was going to kill Amber, that he led her to the basement, and that he then returned upstairs and told Sweet that he had killed Amber, later specifying that he had choked her. Dr. Virani testified that the bruises on Amber's neck were consistent with those caused by a human hand. Although defendant argued that Sweet's testimony was not credible for a number of reasons as discussed later in this opinion, we defer to the jury's credibility determinations. See *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003).

Contrary to defendant's assertion, there was also sufficient evidence presented to the jury to establish that defendant's act of strangling Amber was a cause of her death. Dr. Virani did testify that the cause of death was a combination of asphyxia and drug intoxication, and that he could not declare that either factor was the sole cause of death. But "[i]n assessing criminal liability for some harm, it is not necessary that the party convicted of a crime be the sole cause of that harm, only that he be a contributory cause that was a substantial factor in producing the harm." *People v Bailey*, 451 Mich 657, 676; 549 NW2d 325 (1996). Defendant's act of strangling Amber was clearly a "substantial factor" in Amber's death, given that Dr. Virani classified the death as a homicide because she was asphyxiated and had bruising on her face and neck. Defendant suggests that the asphyxiation could have been caused by a tramadol overdose;[2] however, no evidence was presented to the jury on that subject. Regardless, Dr. Virani's reference to asphyxia and bruising in explaining that Amber's death was a homicide supports the conclusion that her asphyxiation was caused by a violent human act. Further, "it is unnecessary for the prosecutor to negate every reasonable theory consistent with the defendant's innocence. It is sufficient if the prosecution proves its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may provide." *People v Carson*, 189 Mich App 268, 269; 471 NW2d 655 (1991). Viewing the evidence in the light most favorable to the

_____

[2] We decline to consider information that defendant has provided on appeal concerning tramadol overdoses, because the information was not presented to the jury and we have not granted permission to expand the record on appeal. See *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).

prosecution, *Kloosterman*, 296 Mich App at 639, there was sufficient evidence presented to the jury to establish that defendant's act of strangling Amber was a factual cause of her death.

Furthermore, considering the evidence showing that defendant intended to kill Amber, and that he did, in fact, strangle her, her death was "a direct and natural result of the defendant's actions." *Schaefer*, 473 Mich at 436. Importantly, Amber's intoxication did not break the "causal link" between defendant's actions and Amber's death. At most, Amber's intoxication made it easier for defendant to kill her; Dr. Virani answered in the negative when asked if, given her level of intoxication, Amber would have been able to "put up much of a fight." "[W]hen a defendant causes an injury, the special susceptibility of a victim to a particular injury does not constitute an independent cause of the injury such that a defendant is exonerated from criminal liability." *People v Schaw*, 288 Mich App 231, 235-236; 791 NW2d 743 (2010). Based on the evidence showing that defendant strangled Amber with the intention of killing her, her death was reasonably foreseeable. Accordingly, proximate cause was established. *Schaefer*, 473 Mich at 437.

### III. OTHER-ACTS EVIDENCE

Next, defendant argues that the trial court erred by not allowing him, for purposes of showing motive, to present testimony regarding Sweet's jealous nature. We disagree. The trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013).

As an initial matter, defendant effectively abandoned this issue by failing to support it with relevant legal authority. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Defendant cites caselaw regarding his constitutional right to confront the witnesses *against* him. But the proffered testimony at issue pertained not to witnesses against defendant, but rather to witnesses whom defendant intended to call on his own behalf. Specifically, defendant was seeking to introduce testimony from Sweet's former girlfriends to show that Sweet was a jealous person. Therefore, the caselaw relied on by defendant is inapposite.

Nevertheless, the trial court did not abuse its discretion by excluding the proffered testimony. MRE 404(b)(1) provides:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b)(1) is applicable to witnesses. See *People v Catanzarite*, 211 Mich App 573, 579; 536 NW2d 570 (1995); see also *People v VanderVliet*, 444 Mich 52, 68 n 19; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Other-acts evidence is admissible if "the evidence is

(1) offered for a proper purpose and not to prove the [witness's] character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice, MRE 403." *People v Williams*, 240 Mich App 316, 322-323; 614 NW2d 647 (2000) (quotation marks and citation omitted).

The trial court properly concluded that the proffered testimony was irrelevant to Sweet's purported motive to commit the crime. As noted, defendant sought to introduce evidence of Sweet's relationships with former girlfriends, in order to prove that Sweet was a jealous person. Sweet's former girlfriends purportedly would have testified that he had attacked them because he was jealous of their romantic relationships with other men. But Amber was not Sweet's girlfriend or former girlfriend, and defendant's theory was not that Sweet had killed Amber because he was jealous of her having any other romantic relationships. Rather, defendant's theory was that Sweet was jealous of Amber's paternal relationship with defendant and was upset about the amount of time that defendant was spending with her rather than him. Sweet's tendency to become jealous over his former girlfriends' romantic relationships with other men would have little bearing on defendant's theory that Sweet had killed Amber because he was jealous of her paternal relationship with defendant. The other-acts evidence was therefore not relevant to Sweet's purported motive, and the trial court did not abuse its discretion in precluding defendant from introducing impermissible character evidence. MRE 401.

Further, even if the evidence was marginally relevant to Sweet's purported motive, its probative value was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." MRE 403. Because the other-acts evidence was so attenuated from Sweet's purported motive to kill Amber, the probative value of the evidence was outweighed by the risk of prejudicing the jury against Sweet and confusing or misleading the jury as to the overriding issue it was deciding. Therefore, the other-acts evidence also failed the MRE 403 balancing test. *Williams*, 240 Mich App at 322-323. Even if we were to conclude that the trial court erred by declining to admit the proffered other-acts evidence on relevancy grounds, we would still affirm the trial court's decision under MRE 403. *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998).

## IV. ACCOMPLICE INSTRUCTIONS

Defendant also argues that the trial court erred by not providing accomplice instructions, M Crim JI 5.4 to 5.6, to the jury. We disagree. We review for an abuse of discretion a trial court's determination regarding the applicability of a jury instruction to the facts of the case. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *Musser*, 494 Mich at 348. "Even if somewhat imperfect, instructions do not warrant reversal if they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

It is "well established that when an accomplice testifies for the prosecution, the testimony is suspect and must be received only with great care and caution." *People v Heikkinen*, 250 Mich App 322, 327; 646 NW2d 190 (2002). An accomplice may be convicted under a theory of aiding and abetting. *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). "To aid and abet the commission of a crime, the crime itself must be proved, and the defendant must have

rendered some kind of assistance or encouragement to the commission of that crime with the intent that the crime occur or the knowledge that the principal intended for the crime to occur." *People v Blevins*, 314 Mich App 339, 358; 886 NW2d 456 (2016).

Defendant argues that Sweet was at least a "disputed accomplice." The primary, pertinent model jury instruction provides in part as follows:

> (1) Before you may consider what [*name witness*] said in court, you must decide whether [he / she] took part in the crime the defendant is charged with committing. [*Name witness*] has not admitted taking part in the crime, but there is evidence that could lead you to think that [he / she] did.
>
> * * *
>
> (3) When you think about [*name witness*]'s testimony, first decide if [he / she] was an accomplice. If, after thinking about all the evidence, you decide that [he / she] did not take part in this crime, judge [his / her] testimony as you judge that of any other witness. But, if you decide that [*name witness*] was an accomplice, then you must consider [his / her] testimony in the following way . . . . [M Crim JI 5.5.]

If the instruction is warranted, it is to be followed by the cautionary instruction regarding accomplice testimony found in M Crim JI 5.6.

In this case, as the trial court noted, there was simply no evidence presented that created a question of fact regarding whether Sweet was an accomplice to the murder. Sweet testified that defendant had told him that he was going to kill Amber, which Sweet took as a joke. Sweet also said that defendant led Amber into the basement, that he heard what he thought may have been a cry for help, and that defendant entered his room about 10 minutes later and announced that he had killed Amber. There was no evidence that Sweet assisted or encouraged the murder. *Blevins*, 314 Mich App at 358. Notably, Sweet's mere presence in the house at the time of the crime was not evidence that he aided and abetted the crime. See *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999) ("Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime."). And defendant never argued that Sweet was an accomplice or an aider and abettor of Amber's murder; rather, defendant's theory of the case was that Sweet had killed Amber.

Defendant notes that Sweet's testimony establishes that he was an accessory after the fact, because he helped defendant conceal the crime by moving Amber's body to her vehicle and by then picking defendant up after he had moved the vehicle. But an accessory after the fact is not an aider or abettor. *People v Lucas*, 402 Mich 302, 305-306; 262 NW2d 662 (1978); *People v Karst*, 118 Mich App 34, 39; 324 NW2d 526 (1982). Accordingly, evidence showing that Sweet was an accessory after the fact is not evidence that he was an aider and abettor or an accomplice. In the absence of any evidence tending to show that Sweet was an accomplice to Amber's murder, the trial court did not abuse its discretion by denying the requested instructions. See *People v Allen*, 201 Mich App 98, 105; 505 NW2d 869 (1993).

Finally, even if the trial court erred by not giving the accomplice instructions, "reversal [is] not required where the accomplice's potential credibility problems have been plainly presented to the jury by other means, such as through defense counsel's cross-examination of the alleged accomplice." *People v Young*, 472 Mich 130, 139; 693 NW2d 801 (2005). Sweet was thoroughly cross-examined by defense counsel on matters pertaining to his credibility, and defense counsel emphasized Sweet's credibility issues to the jury during closing argument. The trial court also instructed the jury that, in determining Sweet's credibility, it should consider the fact that Sweet had received immunity from the prosecution in exchange for his testimony. Sweet's potential credibility issues were fully presented to the jury. *Young*, 472 Mich at 139.

## V. STANDARD 4 BRIEF

In his Standard 4 brief[3] defendant contends that he was denied the effective assistance of counsel when defense counsel failed to raise defendant's mental competency before the trial court, and also argues that cumulative errors occurred that require reversal of his conviction. We disagree. Our review of unpreserved claims of ineffective assistance of counsel is "limited to mistakes apparent on the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "If review of the record does not support the defendant's claims, he has effectively waived the issue of effective assistance of counsel." *People v Sabin* (*On Second Remand*), 242 Mich App 656, 659; 620 NW2d 19 (2000). This Court reviews claims of cumulative error "to determine if the combination of alleged errors denied defendant a fair trial." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

"To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). It is presumed that counsel was effective, and defendant bears the burden of proving otherwise. *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). Defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

We have described the statutory framework governing a criminal defendant's competency to stand trial as follows:

> In Michigan, the competence of criminal defendants to stand trial is governed by provisions of the Mental Health Code. MCL 330.2020 *et seq*. As a

---

[3] A supplemental appellant brief filed in propria persona by a criminal defendant under Michigan Supreme Court Administrative Order 2004-6, Standard 4.

general rule, a criminal defendant is "presumed competent to stand trial." MCL 330.2020(1). A criminal defendant "shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." *Id*. The statute places this determination in the court's hands. *Id*. ("The court shall determine the capacity of a defendant . . . .").

The prosecution, defense counsel, and the trial court all hold the power to raise the issue of a defendant's competency. MCL 330.2024. When the issue arises, the court must order the defendant's examination by the [Center for Forensic Psychiatry] or other qualified facility. MCL 330.2026(1). The defendant may remain in jail pending and even during the examination. MCL 330.2026(2). However, a report regarding the defendant's competence must be presented to the court within 60 days. MCL 330.2028(1).

"A defendant who is determined incompetent to stand trial shall not be proceeded against while he is incompetent." MCL 330.2022(1). Once a defendant becomes competent, the prosecution may go forward. [*People v Davis*, 310 Mich App 276, 288-289; 871 NW2d 392 (2015).]

Defendant asserts that he told his counsel that he suffered from schizophrenia and that his counsel should have then requested forensic testing to determine his competency.[4] But the record does not reveal what defendant told his counsel regarding his mental illnesses or what investigatory efforts defense counsel made. Therefore, defendant has failed to establish the factual predicate for this alleged error. *Carbin*, 463 Mich at 600; *Heft*, 299 Mich App at 80. But even assuming that defendant told counsel that he was suffering from schizophrenia, a schizophrenia diagnosis, by itself, is not evidence that defendant was incompetent within the meaning of MCL 330.2020(1); rather, "[t]he issue of competence can only be raised by evidence of incompetence." *People v Blocker*, 393 Mich 501, 508; 227 NW2d 767 (1975). We note that defendant's presentence investigation report indicates that "[t]he defendant has been off his medication since being incarcerated in the Saginaw County Jail." But there is no indication in the record that defendant was mentally incompetent at any time during the proceedings. On numerous occasions, defendant interacted with the trial court on the record in a clear and cogent fashion, and there is nothing to suggest that he was "incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." MCL 330.2020(1); Cf. *People v Harris*, 185 Mich App 100, 103; 460 NW2d 239 (1990) (finding that a "bona fide doubt" as to the defendant's competence to stand trial existed when the record was "replete with instances of bizarre statements and behavior of the defendant" during trial). Therefore, it cannot be said that defense counsel was ineffective for failing to raise the issue. See *People v Mette*, 243 Mich App 318, 332 n 8; 621 NW2d 713 (2000).

---

[4] Defendant does not assert that his trial counsel should have offered an insanity defense at trial.

Finally, defendant argues that the cumulative effect of the alleged errors warrants reversal. Because defendant failed to establish a single error, his claim of cumulative error necessarily fails. See *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra