*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERIC LEON MANER, JR.,

Defendant-Appellant.

UNPUBLISHED
January 12, 2023

No. 358404
Saginaw Circuit Court
LC No. 19-045942-FC

Before: SHAPIRO, P.J., and BORRELLO and YATES, JJ.

PER CURIAM.

Defendant was convicted by a jury of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, witness intimidation, MCL 750.122(7)(a), and unlawful imprisonment, MCL 750.349b. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 180 months to 30 years' imprisonment for AWIGBH, 40 months to 10 years' imprisonment for witness intimidation, and 80 months to 20 years' imprisonment for unlawful imprisonment, with the sentences to be served concurrently. Defendant now appeals by right. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of defendant's assault of his then fiancée on October 15, 2018. The victim testified that she was asleep that day and woke up as defendant was beating her. Defendant had his eyes closed, was "mumbling," and was saying "woo, woo." Defendant stabbed the victim in her back, left shoulder and upper arm, and right ear with a pair of "kids' scissors." The attack continued until the victim hit defendant in the head with "a two-by-four" that was lying on the floor. Defendant then dragged the victim by her hair into the hallway where he punched her repeatedly in the face. He did not stop until the victim told him that her mother was outside and needed to speak with defendant. Although the victim's mother was deceased, defendant went outside to look for her. The victim was eventually able to run out of the house and escape. She suffered serious injuries that included a shattered orbital bone, cuts above her eye, an almost entirely severed right ear, split lips, puncture wounds, and defensive wounds on her hands.

Several weeks after the assault, defendant, claiming to have no memory of the incident, called the victim from the jail and asked why he was in jail.

There was also evidence introduced at trial that defendant had been subjected to a traffic stop less than two months before the assault at issue in this case and that the prior traffic stop had resulted in criminal charges. The victim in this case was also listed as a witness in defendant's other criminal matter. There was additional evidence that defendant had called the victim a "snitch" at some point before or during the assault because of her cooperation with police in defendant's other criminal case.

In closing argument, the prosecutor argued that defendant had assaulted the victim because of her involvement as a potential witness in his other criminal matter, that he was trying to prevent her from testifying in his other criminal matter, and that defendant unlawfully restrained or imprisoned the victim as he assaulted her and prevented her from escaping.

The jury convicted defendant as previously stated. Further facts necessary to the resolution of the issues presented on appeal will be discussed below.

## II. COMPETENCY

Defendant first argues that the trial court erred by failing to sua sponte order another competency evaluation when defendant's "bizarre" behavior continued on the day of the trial. Defendant's competency had been an issue throughout the course of the proceedings, and defendant argues on appeal that because defendant had a well-documented pattern of making nonsensical outbursts in court proceedings and had made it impossible to accurately assess his competency by refusing to cooperate in prior competency evaluations ordered during the pretrial proceedings, the trial court should have adjourned the trial and ordered another competency evaluation. Defendant maintains that the circumstances gave rise to a "real question by the time of trial" whether defendant was capable of rationally assisting in his defense, even if he understood the nature and object of his trial.

## A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's decision whether the facts brought to the trial court's attention gave rise to a "bona fide doubt" about the defendant's competence such that the trial court had a duty to raise the issue of incompetence. *People v Kammeraad*, 307 Mich App 98, 138; 858 NW2d 490 (2014) (quotation marks and citation omitted). We also review for an abuse of discretion the trial court's determination on the defendant's competence to stand trial. *Id*. "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. at 140 (quotation marks and citation omitted; alteration in original).

## B. ANALYSIS

It is well settled that it violates due process of law to try or convict an individual while that person is legally incompetent. *Drope v Missouri*, 420 US 162, 172; 95 S Ct 896; 43 L Ed 2d 103 (1975); *Pate v Robinson*, 383 US 375, 378; 86 S Ct 836; 15 L Ed 2d 815 (1966); *In re Carey*, 241 Mich App 222, 227; 615 NW2d 742 (2000). "[S]tate procedures must be adequate to protect this

right." *Pate*, 383 US at 378. "To protect this right to due process, Michigan has enacted statutes and a court rule regarding the competency of criminal defendants." *Kammeraad*, 307 Mich App at 137.

"In Michigan, the competence of criminal defendants to stand trial is governed by provisions of the Mental Health Code. MCL 330.2020 *et seq*." *People v Davis*, 310 Mich App 276, 288; 871 NW2d 392 (2015). "A defendant who is determined incompetent to stand trial shall not be proceeded against while he is incompetent." MCL 330.2022(1). However, a "defendant to a criminal charge shall be presumed competent to stand trial" and "shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." MCL 330.2020(1). "The court shall determine the capacity of a defendant to assist in his defense by his ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial." *Id*.

With respect to raising the issue of incompetence, MCL 330.2024 provides as follows:

The issue of incompetence to stand trial may be raised by the defense, court, or prosecution. The time and form of the procedure for raising the issue shall be provided by court rule.

MCR 6.125(B) provides that the

issue of the defendant's competence to stand trial or to participate in other criminal proceedings may be raised at any time during the proceedings against the defendant. The issue may be raised by the court before which such proceedings are pending or being held, or by motion of a party. Unless the issue of defendant's competence arises during the course of proceedings, a motion raising the issue of defendant's competence must be in writing. If the competency issue arises during the course of proceedings, the court may adjourn the proceeding or, if the proceeding is defendant's trial, the court may, consonant with double jeopardy considerations, declare a mistrial.

Next, MCL 330.2026(1) provides:

Upon a showing that the defendant may be incompetent to stand trial, the court shall order the defendant to undergo an examination by personnel of either the center for forensic psychiatry or other facility officially certified by the department of mental health to perform examinations relating to the issue of incompetence to stand trial. The defendant shall make himself available for the examination at the places and times established by the center or other certified facility. If the defendant, after being notified, fails to make himself available for the examination, the court may order his commitment to the center or other facility without a hearing.

MCR 6.125 further provides in relevant part:

(C) Order for Examination.

(1) On a showing that the defendant may be incompetent to stand trial, the court must order the defendant to undergo an examination by a certified or licensed examiner of the center for forensic psychiatry or other facility officially certified by the department of mental health to perform examinations relating to the issue of competence to stand trial.

(2) The defendant must appear for the examination as required by the court.

(3) If the defendant is held in detention pending trial, the examination may be performed in the place of detention or the defendant may be transported by the sheriff to the diagnostic facility for examination.

(4) The court may order commitment to a diagnostic facility for examination if the defendant fails to appear for the examination as required or if commitment is necessary for the performance of the examination.

(5) The defendant must be released from the facility on completion of the examination and, if (3) is applicable, returned to the place of detention.

(D) Independent Examination. On a showing of good cause by either party, the court may order an independent examination of the defendant relating to the issue of competence to stand trial.

The claim of error defendant presents to this Court on appeal is predicated on defendant's contention that the trial court was required to sua sponte order further investigation of his competency. As this Court has explained:

With respect to whether a trial court has an obligation to raise the issue of competency and order an examination, and in regard to our standard of review, this Court in *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990), observed:

Although the determination of a defendant's competence is within the trial court's discretion, a trial court has the duty of raising the issue of incompetence where facts are brought to its attention which raise a "bona fide doubt" as to the defendant's competence. However, the decision as to the existence of a "bona fide doubt" will only be reversed where there is an abuse of discretion. . . .

"[T]he test for such a bona fide doubt is whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." Evidence of a defendant's irrational behavior, a defendant's demeanor, and a defendant's prior medical record relative to competence are all relevant in determining whether further inquiry in regard to competency is required. "There are, of course, no fixed or immutable signs which invariably indicate the need for

-4-

further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." [*Kammeraad*, 307 Mich App at 138-139 (some citations omitted).]

Here, defendant's competency was an issue throughout the pendency of this case, resulting in three separate competency evaluations. A Center for Forensic Psychiatry (CFP) evaluation report on defendant's competency to stand trial was prepared by Dr. Richard Rickman on December 18, 2018. According to Rickman's report, defendant was not cooperative with the evaluation process and frequently failed to respond to questions posed or gave a very brief response following a lengthy silence. Rickman also described defendant as argumentative and irritable. Rickman documented statements by defendant indicating that defendant believed that Rickman knew why defendant had been arrested and did not require defendant's explanation. Rickman wrote, "When I asked [defendant] if he would mind telling me why he was not responding to my questions, he said, 'You are just writing down what you think I said.' " Defendant also reportedly declared that he was " 'done talking' " several times during the interview before eventually providing a brief answer. Based on the interview, as well as his consultation of jail staff and defendant's mental health records indicating diagnostic impressions of Depressive Disorder Not Otherwise Specified and Schizoaffective Disorder Depressed Type, Rickman reached the following conclusion:

With respect to Mr. Maner's mental condition at the time of the present examination, I tend to concur with the jail sergeant's impressions of Mr. Maner as being "manipulative." Although, at times, he seemed to want to give me the impression that he could not provide answers to my questions, the fact that he did eventually answer some questions (albeit very briefly) indicated to me that his non-responsiveness was within his volitional control.

Additionally, it appears from reviewing the jail mental health records that he has been willing to provide more information to jail staff at various times during his incarceration, although it does appear that he has also behaved in a manner very similarly to how he presented at the evaluation unit with jail mental health staff. He did not claim to be experiencing symptoms of thought disorder at the time of the interview, and I saw no overt indications that he was responding to internal stimuli, or experiencing strange thoughts or delusions during the interview.

Although competency to stand trial was unable to be addressed directly, Mr. Maner did make a few spontaneous remarks about his legal situation indicating that he was capable of understanding the charges against him as well as the severity of the charges. He recognized that I had the prosecuting attorney's charge sheet in front of me, and knew that the offenses were documented in that form.

Although he would likely be very challenging client [sic] for an attorney (and his attorney has provided documentation reflecting this tendency), the available information indicates that this is most likely due to volitional behavior on the part of Mr. Maner, and does not indicate a lack of capacity to work collaboratively with his attorney if he is so motivated and exerts effort in this regard. There was nothing in his manner of presenting during the present

evaluation, nor were there any indications in the jail records that his thought processes and decision-making abilities are compromised by psychosis or other major psychiatric problems. In short, I saw no clinical data to indicate that the presumption of competence (as stated in the statute) would not apply in this case. Consequently, it is the opinion of this examiner that Mr. Maner was competent to stand trial at the time of his evaluation.

On January 17, 2019, the district court entered an order finding that defendant was competent to stand trial.

After defendant was bound over to the circuit court, he was again evaluated for his competency to stand trial pursuant to court order. On August 15, 2019, another report on defendant's competency to stand trial was prepared by Dr. Aaron Ceresnie after he evaluated defendant at the CFP. Defendant again was uncooperative, minimally responsive or unresponsive to questions, and sometimes made nonsensical statements. Ceresnie also concluded that defendant was competent to stand trial:

> With respect to Mr. Maner's mental condition at the time of the examination, he did not cooperate or participate or answer any interview questions. A review of collateral records and his previous CFP evaluations reveals a consistent pattern of volitional disengagement and questions about his exaggeration of psychiatric symptoms. Though he carried a diagnosis of unspecified schizoaffective disorder in the jail records, there is no indication in any mental health notes that he explicitly displayed psychotic symptoms in the jail. He has had multiple violent incidents toward staff in the jail and has similarly refused to answer any questions related to mental health. He has been documented to be capable of providing relevant information, and there is no available information to suggest he is incapable of doing so at the present time. In my opinion, the available information suggests Mr. Maner is capable of understanding the nature and object of the proceedings against him and assisting rationally in his defense. Although the ultimate decision in this matter depends on a judicial determination, it is my opinion that Mr. Maner is competent to stand trial.

At a subsequent hearing on September 9, 2019, defendant's attorney acknowledged the conclusion of this report and requested an independent examination. Defendant again was disruptive during this hearing, at one point asking to be "released or sentenced to something." He also blurted out that the trial had been "canceled." The court agreed to defense counsel's request and entered an order appointing Dr. Jeffrey Wendt to conduct a psychological evaluation regarding defendant's competency.

Wendt completed a report, in which he summarized his evaluation of defendant and his opinion of defendant's competency as follows:

> In general, Mr. Maner failed to participate in this evaluation in a meaningful manner. Defense counsel and CFP examiners described similar interactions with Mr. Maner in terms of his unwillingness to participate in discussions about his case. This examiner considered the possibility that Mr. Maner's presentation was the

product of valid mental illness. The primary question in determining Mr. Maner's competency to stand trial is whether his failure to participate is the product of mental illness or whether it is intentional behavior based on cynicism and frustration by a man with antisocial personality traits. The jail doctor offered a diagnosis of Depressive Disorder-Not Otherwise Specified, and appeared to have also considered a diagnosis of Schizoaffective Disorder- Depressed Type. While Mr. Maner reported hearing voices and having suicidal thoughts to jail staff, available records are insufficient to establish firm documentation of a history of mental illness. Notably, despite his report of hallucinations, the jail doctor failed to prescribe antipsychotic medication. Jail staff has reportedly described Mr. Maner as manipulative in the past, and this was consistent with his presentation during the current evaluation, as he expressed a desire for me to help him be moved to the general population of the jail, and he became frustrated and increasingly uncooperative when I told him I could not do so. While there is insufficient information to support a conclusion that Mr. Maner is mentally ill, there is also insufficient information to definitively rule out the alternative, that is, that he is suffering from valid psychotic disorganization resulting from untreated mental illness. Whatever the cause, Mr. Maner failed to participate in this evaluation in a meaningful manner. As such, he failed to demonstrate an understanding of the nature and object of the proceedings against him. If he interacted with his attorney in a similar manner it would certainly present a barrier to assisting in his defense in a rational manner. However, based on the available information, and the presumption of competence, it is my opinion that Mr. Maner is likely presently able to understand the nature and object of the proceedings against him and to rationally assist in his own defense, if he chooses to do so. Therefore, it is my opinion that he is competent to stand trial.

At a subsequent hearing on January 27, 2020, the trial court made a record of various incidents during which defendant's behavior resulted in the need for intervention by jail staff. This included an incident in which defendant attempted to leave the courtroom multiple times, "stepped towards" a detective in the courtroom, refused to sit back down, "hurled [himself] over the jury box" and caused "panic" in the courtroom, and was finally restrained by deputies. There was also a report that defendant punched a jail employee in an elevator. The trial court warned defendant that if he caused any similar disruptions during trial, he would be removed from the courtroom to view the proceedings by remote video. Defendant informed the court that he wanted to plead to "probation" and plead to "trustee." The trial court told defendant that he could speak with his attorney.

At the beginning of the first day of trial, defendant claimed, "I did my time" and asked if he was being released. He also cursed at the trial judge. The trial court warned defendant:

> *The Court*: All right. Sir, I mentioned this to you before. If you speak out in that manner, you speak out of turn, we'll have to have you removed from the courtroom; and we will proceed with your trial without you in the courtroom. You'll have to observe it closed-circuit from either the courthouse or the back room, here, with only the opportunity to consult with your attorney on breaks.

Now, if you would like to stay in the courtroom, you need to behave in a responsible manner. That means not cursing or calling people names. It means only speaking when it's your turn to speak. Do you understand?

*The Defendant*: I'm behaving.

Defendant was admittedly disruptive, uncooperative, and difficult from the outset on the first day of trial. He began disrupting the proceedings even before the jury panel was brought into the courtroom by swearing, yelling, and shaking his handcuffed hands at his attorney as his attorney attempted to address the court. At that point, five deputies surrounded defendant due to the concerns about his behavior. Nonetheless, despite defendant's continued pattern of disruptive behavior, the record of defendant's three previous competency evaluations was highly relevant to the question whether further additional inquiry into his competency was necessary. *Kammeraad*, 307 Mich App at 139.

The competency evaluation reports noted defendant's uncooperative, argumentative, nonsensical, and manipulative behavior, as well as defendant's documented mental health issues. Yet, each evaluator ultimately concluded that defendant was competent to stand trial. The evaluators opined that defendant's behavior was within his "volitional control" and there was no indication that he could not understand the nature and object of the proceedings or rationally assist his defense if he *chose* to do so. Accordingly, on this record, we conclude that a reasonable judge in the trial court's position would not have experienced a bona fide doubt about defendant's competence to stand trial, and the trial court thus did not abuse its discretion by not sua sponte instigating further inquiry into defendant's competency. *Id*. at 138-139.

Our conclusion is further supported by this Court's decision in *Kammeraad*. In *Kammeraad*, the defendant repeatedly attended court proceedings clothed only from the waist down and had to be taken into the courtroom in a wheelchair because he refused to walk on his own even though there was no physical or medical condition that affected his ability to walk. *Id*. at 102-113, 105 n 3. The defendant answered questions posed of him by the trial court with nonsensical rants, refused the assistance of his appointed counsel, refused to represent himself or waive his right to counsel, and refused to participate in the trial proceedings in any meaningful way. *Id*. at 102-116. The defendant claimed that the judge and the court proceedings were part of a "scam" and a "criminal enterprise." *Id*. at 113. This Court held that the trial court did not abuse its discretion by finding that defendant's actions were intentional displays of defiance rather than the product of mental illness and declining to order a competency evaluation. *Id*. at 140-141. In reaching this conclusion, this Court also noted the deference to be accorded to the trial court's ability to actually observe and interact with the defendant during the court proceedings. *Id*. at 141.

In this case, defendant was similarly difficult and disruptive during the proceedings but he had been found by three separate examiners to be capable of exercising personal control over his conduct such that he was capable of understanding the nature and object of the proceedings and rationally assisting his defense if he so chose. The record supports the conclusion that the statutory presumption of competence was not overcome. MCL 330.2020(1). Based on the totality of the factual circumstances brought to the attention of the trial court, and deferring to the trial court's ability to observe defendant's actions and speech, we conclude that the trial court did not abuse its

discretion by declining to sua sponte order further evaluation of defendant's competency to stand trial. *Kammeraad*, 307 Mich App at 138-139, 141.[1]

Moreover, defendant does not argue on appeal that he was incompetent to stand trial at the time of trial, nor has he provided any evidence that he was incompetent to stand trial. Instead, defendant merely argues that there was a "real question" at the time of trial whether defendant was capable of rationally assisting in his defense. In *People v Lucas*, 393 Mich 522, 529; 227 NW2d 763 (1975), our Supreme Court explained that a posttrial claim of error regarding a defendant's competency should first be raised through a motion in the trial court for a new trial:

> It is our view that this Court should not function in cases such as the present as a never-resolving, ever-revolving door when evidentiary presentation at the trial court level will permit determination of the substantiality of claimed error and avoid the 'playing of the appellate game'. Henceforth it is incumbent upon a defendant claiming error for noncompliance with the statutory, court rule, or constitutional provisions respecting competency to stand trial to present a motion for new trial, or delayed motion for new trial, seeking an evidentiary hearing at the trial court level before claimed error will be considered upon appeal. In the event evidence of incompetency is shown it will be the obligation of the trial court to hold an evidentiary hearing to determine whether a new trial is required.

Here, the register of actions does not indicate that defendant moved in the trial court for a new trial seeking an evidentiary hearing regarding defendant's competency to stand trial. Accordingly, defendant has not properly presented this issue for appellate review. *Id*. Nonetheless, as fully explained above, even if defendant had properly presented this issue, defendant has failed to demonstrate that the trial court abused its discretion in declining to order a further competency evaluation.

Defendant additionally argues that his trial counsel was ineffective for failing to raise the issue of his competence. Defendant asserts this argument in one clause of one sentence and does not explain when defendant's trial counsel should have raised this issue, ignoring the fact that defendant's trial counsel successfully requested an independent examination of defendant's competency. Regardless, had defense counsel requested a fourth competency examination, there would have been no basis for granting such a request based on the current record for the reasons explained above regarding whether the trial court should have sua sponte ordered a fourth competency evaluation. Therefore, defendant has not demonstrated that he was denied the

---

[1] We further note that defendant has not explained how he believes the trial court should have subsequently developed a bona fide doubt about defendant's competence in light of the three evaluations finding him competent. Instead, defendant merely cites record evidence of defendant's bizarre comments and essentially ignores that he was evaluated three times for competency.

effective assistance of counsel. "Trial counsel is not ineffective for failing to advocate a meritless position." *People v Payne*, 285 Mich App 181, 191; 774 NW2d 714 (2009).[2]

## III.  DUE PROCESS

Next, defendant argues that his state and federal constitutional due process rights were violated when the jury was exposed to defendant's disruptive behavior and was able to see that defendant was shackled in handcuffs, leg irons, and belly chains because the trial court denied the request of defendant's counsel to have defendant sequestered from the jury before the jury panel was brought into the courtroom to begin voir dire.

## A.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On the first day of trial, before the jury panel was brought into the courtroom for voir dire, issues arose regarding defendant's courtroom behavior, whether he would remain shackled during trial, and his presence in the courtroom during trial. The trial court ruled that defendant would remain shackled in the courtroom during the trial based on concerns that defendant had established a pattern of frequently trying to escape custody. The trial court supported its ruling by reference to reports from the jail that had been provided to the court indicating that defendant had attempted to escape from the jail on multiple occasions, acted in a "resistant and combative" manner toward jail personnel on multiple occasions, attempted to run out of the room multiple times when he was transported to the CFP despite still being shackled, attempted to leave the courtroom multiple times during earlier court proceedings, "hurled" himself over the jury box during an earlier proceeding, and was found in the jail with kitchen sporks that had been altered to have "sharp and sturdy" points that could be used as weapons. These incidents were documented to have occurred between April 2019 and October 2020.

The trial court also considered the manner in which defendant behaved in the courtroom so far that day as these preliminary matters were being addressed and before the jury panel was brought in. This behavior included defendant standing up, yelling, and shaking his hands at defense counsel as defense counsel was addressing the trial court. Further, the trial court noted that the trial was being held in The Dow Event Center to accommodate precautions necessary due to the pandemic and that the room had five or six exit points, which made it difficult for security.

The record indicates that defendant was wearing street clothes and arrangements had been made to conceal defendant's restraints from the jury. These arrangements included table clothes that went to the floor, and defendant was instructed to keep his hands down. The trial court noted that the jury would be "a considerable distance from [defendant] because of our COVID precautions here."

---

[2] We note, however, that defense counsel raised his concerns about defendant's competence and general mental health issues again on the record before the jury panel was brought in to begin voir dire. These concerns were raised in the context of moving to have defendant sequestered in a separate room during trial.

Additionally, as relevant to defendant's appellate argument, defense counsel moved the trial court to remove defendant from the courtroom for him to watch the proceedings by video from another room. This motion was also made before the jury panel was brought into the room. Defense counsel explained that defendant had already been yelling and disrupting the court proceedings, as well as grabbing defense counsel's paperwork. Defense counsel stated, "I don't think it's going to work with him in the room." Defense counsel also expressed his concern that defendant was "going to do something very outrageous during the trial." Defendant interjected and stated that he did not want to be placed in another room. It was at this point that defendant stood up and shook his hands at his attorney while yelling. In response, five deputies surrounded defendant. Defense counsel maintained that he wanted to have defendant removed because counsel was concerned that if defendant "acted up" in front of the jury, it would be prejudicial to defendant's case.

The trial court warned defendant that he would be removed if he did not behave appropriately, and defendant agreed to behave:

> *The Court*: Mr. Maner, we are going to proceed with the trial today. So if I bring the jury in, will you behave or will you continue to yell out and make statements the way that you have been here this morning, so far, and you have previously?

> *The Defendant*: I'll behave.

> *The Court*: You will behave?

> *The Defendant*: Yeah.

> *The Court*: That means you can't speak out.

> *The Defendant*: I'm behaving.

> *The Court*: All right. If you start yelling or speaking out while other people are talking, then I will have you removed from the courtroom. Do you understand that?

> Do you understand, sir?

> *The Defendant*: Yes.

> *The Court*: Do you understand, if you can't do that, we would—we have another room for you available; you'll have to watch the trial by closed-circuit TV?

> *The Defendant*: I understand what you're saying.

The trial court denied defense counsel's request, reasoning that defendant had a right to be present at trial. Defendant had another outburst involving yelling and swearing at the deputies and threatening the deputies. Defendant was adamant about having his handcuffs removed. The trial court stated:

-11-

*The Court*: All right. Mr. Maner, you've exhibited an interest in running, repeatedly. I cannot let them—

*The Defendant*: So what?

*The Court*: —off of you—

*The Defendant*: So what?

*The Court*: —for security purposes. So for that reason, if you have another outburst I'm not going to keep you in the courtroom, whether the jury is here or not. This has been repeated throughout the morning, you've repeated it throughout prior proceedings.

When the jury panel was about to be brought in, the trial court instructed everyone to remain seated so defendant could remain seated without looking unusual, thus concealing his shackles. As the names of the first group of potential jurors were being read, defendant disrupted the proceedings as follows:

*The Defendant*: [Judge], do you want me to return these?

*The Court*: Mr. Maner, if you have a question you can let your attorney know, or write it down and give it to him.

*The Defendant*: Thanks, but I'm going to—

*The Clerk*: Juror for Seat 4 will be . . .

Juror for Seat 5 will be . . .

*The Defendant*: You behind the steps right now. I'm trying to see what you're charging me with.

*The Court*: Mr. Maner, keep your hands down, please, and speak with your attorney. If you have a question he can let me know what it is.

*The Clerk*: Juror for Seat 6 will be . . .

Juror for Seat 7 will be . . .

*The Deputy*: Your Honor?

*The Court*: Mr. Maner, you need to take your seat, please.

*The Defendant*: You going to let me go or not?

*The Court*: Mr. Maner, please take your seat or we'll have to remove you from the courtroom.

*The Defendant*: You going to let me go or not?

*The Court*: You need to be quiet.

*The Defendant*: Fucking bitch.

*The Court*: Remove him from the courtroom, please.

*The Defendant*: Fuck, you going to let me go or not?

*The Court*: The record will reflect that the defendant knocked over a chair—

*The Defendant*: Fuck.

*The Court*: —as well as a divider on the table.

*The Defendant*: Fucking bitch.

*The Court*: He's also swearing as he leaves the courtroom.

*The Defendant*: Get away from me, bitch.

*The Court*: All right. Ladies and gentlemen, please understand that the defendant here is very concerned about his trial. He has been warned not to be disruptive. He obviously became somewhat disruptive, so we had him removed from the courtroom. We will be having him stay out of the courtroom during the remainder of the trial; he'll be able to observe it from a separate room. But we can't have the kind of disruption that he just displayed.

Understand that this is very serious for him, and it can be very upsetting for some people, so please don't hold that against him in terms of rendering your verdict.

Subsequently, outside the presence of the pool of potential jurors, defense counsel moved for a mistrial. In doing so, he described defendant's disruption that led to his removal from the courtroom:

Prior to the—bringing the jury into the courtroom setting this morning, we had some discussion regarding the mental capacity and condition of my client. I had indicated to the Court that he was going to be disruptive. I asked that he be placed in a room where he can watch; indicated to the Court that he was going to do something in front of the jury that would be highly prejudicial to him. And then the Court went ahead and brought the jury in, and kept him in the courtroom.

When the jury came in he was seated at the defense table. He did have belly chains and leg irons and handcuffs shackled to the belly chains. The Court had put—had curtains put around the table.

\* \* \*

-13-

When the jury—when the Court said—was swearing in the jury, the Court said please rise. He stood up, obvious to everyone that was looking in his direction, all the chains and—he had on him. Then he sat back down.

He was saying things rather disruptive. I don't know if the Court heard it during this whole time. And then he became very disruptive; stood up, kind of lunged over toward my direction, knocked the visor off. The documents I had on the defense table were knocked down. Five deputies, or six, were trying to take control of him. He was fighting them. He was screaming and yelling, and taken from the courtroom.

I don't—I can see no way that that is not prejudicial to the defense and to the defendant. And we've only—into this thing for a half a day.

The trial court denied the motion for a mistrial. The trial court referenced defendant's lack of cooperation in his CFP and independent psychological examinations and the jail reports indicating that defendant chose to be disruptive. The trial court stated that defendant had been made aware of the procedures for ensuring that his shackles were concealed and that defendant had assured the court that he would behave in front of the jury. The trial court explained that the caselaw clearly provided that defendant had a right to be present at trial and could only be excluded for "specific reasons." The court concluded, "So I feel that he had the right to be here, to show whether he wanted to cooperate and behave while the jury was here. He chose not to." Additionally, the trial court stated that because of the courtroom set up, defendant's chains and shackles were not clearly visible to the jurors. The court also stated that defendant was no longer kicking and screaming by the time he was escorted from the courtroom by the deputies.

After jury selection was completed and the jury was excused for the day, defense counsel renewed the motion for a mistrial. The trial court again denied the motion.[3]

## B. STANDARD OF REVIEW

Defendant's appellate argument is somewhat lacking in development and clarity with respect to the precise right defendant claims was infringed. However, we understand defendant's argument to implicate several related due-process rights.

This Court generally reviews de novo claims involving alleged violations of a defendant's rights to due process and a fair trial. *People v Steele*, 283 Mich App 472, 478; 769 NW2d 256

---

[3] The trial court stated in relevant part:

Anybody that said they were affected or concerned, we allowed them to voice that. We excused them. It was very clear to everyone that they could be excused if—if that was a problem for them. We did excuse anybody that seemed to have a concern, and I think we've covered that extensively. So I'm going to deny the motion for a mistrial, at this time.

(2009). Questions of law are reviewed de novo. *People v Blackmon*, 280 Mich App 253, 259; 761 NW2d 172 (2008).

Although a defendant has a constitutional right to be present at trial,[4] *People v Mallory*, 421 Mich 229, 246 n 10; 365 NW2d 673 (1984); *People v Buie (On Remand)*, 298 Mich App 50, 56-57; 825 NW2d 361 (2012); *Kammeraad*, 307 Mich App at 116-117, it is "within the trial court's discretion to remove a defendant from the courtroom if the defendant's behavior is disruptive," *Buie*, 298 Mich App at 58. "We review a trial court's decision to shackle a defendant for an abuse of discretion under the totality of the circumstances." *Payne*, 285 Mich App at 186.

"We also review the trial court's decision on a motion for mistrial for an abuse of discretion." *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Ortiz-Kehoe*, 237 Mich App 508, 513-514; 603 NW2d 802 (1999).

## C. ANALYSIS

It is well settled that a criminal defendant has a constitutional right to be present at trial, including voir dire. *Illinois v Allen*, 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353 (1970); *Mallory*, 421 Mich at 246 n 10, 247; *Buie*, 298 Mich App at 56-57. "[O]nly a defendant may waive both his statutory and constitutional right to be present during his trial." *Buie*, 298 Mich App at 56-57 (quotation marks and citation omitted).

Here, although defense counsel requested that defendant be removed from the courtroom before the panel of potential jurors was brought it, defendant clearly expressed his desire to remain in the courtroom. Thus, the record does not demonstrate any formal waiver of the right to be present by defendant. See *Buie*, 298 Mich App at 57 ("Waiver is defined as the intentional relinquishment or abandonment of a known right.") (quotation marks and citation omitted).

Nonetheless, it is also well established that under certain circumstances, a defendant may forfeit the right to be physically present in the courtroom through behavior that is so "disorderly" or "disruptive" that it prevents the proceedings from being continued. *Mallory*, 421 Mich at 248; *Kammeraad*, 307 Mich App at 118; *Buie*, 298 Mich App at 57. More specifically, "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 US at 343.

In this case, defendant was removed from the courtroom based on his disruptive and disrespectful conduct after the trial court had already warned him that he would be removed if he continued his disruptive and disrespectful behavior. Defendant does not argue on appeal that he was wrongfully removed. Instead, defendant appears to argue that he should have been

---

[4] Defendant has not advanced any argument predicated on the statutory right to be present at trial. See MCL 768.3.

preemptively removed sooner in the proceedings—against his will and before he had a disruptive outburst in front of the potential jurors—so as to prevent the jury from seeing his shackles and being exposed to defendant's disruptive behavior.

The United States Supreme Court has held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial," such as "potential security problems and the risk of escape at trial." *Deck v Missouri*, 544 US 622, 629; 125 S Ct 2007; 161 L Ed 2d 953 (2005). Accordingly, this Court has stated: "Included within the right to a fair trial, absent extraordinary circumstances, is the right to be free of shackles or handcuffs in the courtroom" and "[w]hile this right is not absolute, a defendant may be shackled only on a finding supported by record evidence that this is necessary to prevent escape, injury to persons in the courtroom or to maintain order." *Payne*, 285 Mich App at 186 (quotation marks and citation omitted).

Here, defendant does not even seriously argue that the trial court erred by determining that defendant would remain shackled; defendant concedes that "the current record contains ample explanation for the restraints." Defendant instead constructs an argument that relies on misstating the factual circumstances in the trial court and ignoring his responsibility for his own conduct.

First, defendant claims that the trial court did not give a reason for denying defense counsel's request to preemptively remove defendant from the courtroom. The record flatly contradicts this assertion. The trial court explained that its ruling was based on defendant's right to be present at trial, which defendant explicitly asserted and did not waive. *Buie*, 298 Mich App at 56-57. "[C]ourts must indulge every reasonable presumption against the loss of the right to be present during trial." *Mallory*, 421 Mich at 248 n 13. Both the United States Supreme Court and the Michigan Supreme Court have explained that shackles may provide *a* permissible means (although not the only permissible means) to protect a disruptive defendant's right to be present while maintaining the security of the courtroom and preventing a legitimate risk of escape if the individual facts and circumstances support a finding that shackles are necessary for that defendant. See *Allen*, 397 US at 343-344; *Estelle v Williams*, 425 US 501, 505; 96 S Ct 1691; 48 L Ed 2d 126 (1976); *Mallory*, 421 Mich at 248-250. Denying a defendant's right to be present is not a permissible way to prevent the jury from seeing a defendant's shackles where shackles are appropriately necessary. Cf. *Mallory*, 421 Mich at 248-250 (stating that "[i]f a jury view is held upon retrial, the trial court should take all reasonable steps necessary to protect defendants' right to be present, as well as the safety of the jurors and community at large.").

Second, defendant ignores the steps the trial court ordered to prevent defendant's shackles from being seen by the potential jurors and, crucially, defendant further ignores that his own conduct was responsible for destroying the effect of the mitigating steps taken by the trial court. The record reflects that the trial court informed defendant to keep his hands down and ordered that table cloths running to the floor would be used to conceal defendant's shackles. "[A] defendant is not prejudiced if the jury was unable to see the shackles on the defendant." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). The restraints thus would have remained hidden if not for defendant's decision to make his restraints visible to the jury panel by raising his hands, standing up, and causing a physical disruption to the proceedings necessitating his removal from the courtroom. Defendant does not cite any authority for the proposition that the trial court is

somehow required to protect him from his own misconduct by preemptively removing him from the courtroom against his will in order to prevent him from making his concealed restraints visible to the jury. Clearly, such a proposition is nonsensical. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Kammeraad*, 307 Mich App at 143 (quotation marks and citation omitted).

As explained above, defendant created the situation of which he now complains on appeal. "The contumacious defendant brings his plight upon himself and presents the court with a limited range of alternatives. Obviously, a defendant cannot be allowed to abort a trial and frustrate the process of justice by his own acts." *Estelle*, 425 US at 505 n 2. The Supreme Court has recognized that "the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant" while nonetheless affirming that such a practice may be a necessary alternative to removal for a "contumacious" and "disruptive" defendant. *Id*. at 504-505 (quotation marks and citation omitted). "We will not condone or allow a defendant to perpetrate chaos at his own trial and then obtain a mistrial on the basis of prejudice." *People v Staffney*, 187 Mich App 660, 667; 468 NW2d 238 (1990) (quotation marks and citation omitted). Defendant has thus failed to demonstrate any error on the part of the trial court in how it handled his courtroom disruptions or his shackling, and defendant has failed to show that the trial court abused its discretion in denying his motions for a mistrial.

## IV. SENTENCE

Defendant argues that the trial court failed to adequately articulate its reasons for departing from the sentencing guidelines.

Issues involving the interpretation and application of the legislative sentencing guidelines present legal questions that are reviewed de novo. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). The sentencing guidelines are advisory but nonetheless must be consulted and considered by the sentencing court. *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015).

A "sentencing court may exercise its discretion to depart from that guidelines range without articulating substantial and compelling reasons for doing so[,]" and a "sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id*. at 392. "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

Defendant argues on appeal that his "180 month minimum sentence for assault with intent to do great bodily harm, a 28-month upward departure from the top of his 38-152 month guidelines, violated the principle of proportionality."

-17-

Defendant was convicted of AWIGBH, witness intimidation, and unlawful imprisonment. AWIGBH is a Class D offense, MCL 750.84; MCL 777.16d, witness intimidation is a Class F offense, MCL 750.122(7)(a); MCL 777.16f, and unlawful imprisonment is a Class C offense, MCL 750.349b; MCL 777.16q. The trial court ordered that defendant's sentences for these three convictions would be concurrent. The minimum guidelines range for defendant's unlawful imprisonment conviction, which was the conviction with the highest crime class, was 58 to 228 months.

Defendant argues that the trial court departed upward with respect to his AWIGBH sentence because that minimum sentence, although falling within the minimum guidelines range for his highest crime class conviction, exceeded the guidelines range that would have applied to his lower crime class conviction for AWIGBH. This Court has previously rejected this argument in other cases:

> We are bound by this Court's decision in *People v Mack*, 265 Mich App 122; 695 NW2d 342 (2005), which addressed this exact issue. In *Mack*, we held that the trial court was not required to independently score the guidelines for and sentence the defendant on each of his concurrent convictions if the court properly scored and sentenced the defendant on the conviction with the highest crime classification. *Id*. at 126-130. The *Mack* Court reasoned that, when sentencing on multiple concurrent convictions, the guidelines did not need to be scored for the lower-crime-class offenses because MCL 771.14(2)(e) provides that presentence reports and guidelines calculations were only required "for the highest crime class felony conviction." *Id*. at 127-128, citing MCL 771.14(2)(e). The rationale for this legislative scheme is fairly clear because, except in possibly an extreme and tortured case, the guidelines range for the conviction with the highest crime classification will be greater than the guidelines range for any other offense. Given that the sentences are to be served concurrently, the guidelines range for the highest-crime-class offense would subsume the guidelines range for lower-crime-class offenses, and there would be no tangible reason or benefit in establishing guidelines ranges for the lower-crime-class offenses. Therefore, because the sentences for defendant's lower-crime-class offenses were to be served concurrently with the highest-class-felony sentence, the Class E guidelines did not need to be scored and there was no departure. [*People v Lopez*, 305 Mich App 686, 690-692; 854 NW2d 205 (2014).][5]

Here, defendant's 180-month minimum sentence was within the guidelines range of his highest-crime-class conviction of unlawful imprisonment. Defendant's guidelines range for the lower-crime-class conviction of AWIGBH did not need to be scored, and he cannot demonstrate that his sentence on that conviction, which was to be served concurrently with his other sentences, constituted a departure based on that irrelevant guidelines range. *Id*. Defendant's appellate argument is therefore entirely without merit.

---

[5] These legal principles remain good law after *Lockridge*. See *People v Reynolds*, 508 Mich 388, 392-393; 975 NW2d 821 (2021) (quoting the above rules from *Lopez* with approval).

-18-

Affirmed.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Christopher P. Yates